Banner Baptist Church *v.* Watson *et al.*

*(Knoxville,* September Term, 1951.)

Opinion filed December 14, 1951.

Rehearing denied February 9, 1952.

O. M. TATE, JR., of Knoxville, and B. A. TOWNSEND, of Sevierville, for complainant.

HARLEY FOWLER, of Knoxville, and ROBERT OGLE, JR., of Sevierville, for defendants.

MR. JUSTICE GAILOR delivered the opinion of the Court.

The controversy presented by this litigation has finally resolved itself into a contest for $2,000 paid into Court by the State for the agreed value of a quarter-acre of land split by Highway No. 71, in Sevier County, and possessed and used by the Church since November 15, 1926. The land in controversy is referred to in the record as the ''School Lot,'' to distinguish it from an adjoining tract which is referred to as the ''Church Lot,'' upon which the Church is actually located. It is not disputed that both lots have been used for Church purposes.

The original bill was filed by the Church to enjoin trespass on the ''School Lot'' by the defendants, and after protracted and complex pleading and controversy between the parties, the question of trespass to the land became moot by reason of the condemnation of the ''School Lot'' for highway purposes by the State, which paid $2,000, the agreed value of the lot, into Court, leaving the disposition of the money to the adjudication of the Chancellor.

Thereafter, by formal stipulation, it was agreed: ''At the trial of this cause set for June 4, 1951, the issues to be determined shall be limited to the question of whether complainants or defendants were the lawful owners of the land referred to in the record as the 'school lot' and thus entitled to the sum of $2000, this sum representing the proceeds realized from the condemnation of said land by the State and said sum having been paid into the registry of the Court in this cause on October 11, 1950, both complainants and defendants having agreed that said sum represents the fair cash market value of said land and having executed a deed to the State of Tennessee therefor.''

In a careful, well-reasoned opinion, the Chancellor determined this issue in favor of the Church, and defendants have appealed, assigning errors which we consider hereinafter.

To understand the determination of the cause by the Chancellor it is necessary to give some account of the title and the conveyances by which the School Lot finally came into possession of the Church. In 1870, one Isaac Ogle conveyed a 110-acre-tract, which included the School Lot, to his granddaughter, "Susan King Maples during her life and the heirs of her body of the said Susan Maples after her death." By this deed the grantor undertook to convey to Susan King Maples a life estate, with remainder to the heirs of her body. She was the wife of Samuel M. Maples.

With her husband, Susan King Maples lived on this tract of land until her death on May 22, 1921, and except for the Church Lot and School Lot, which were parts of the tract, the husband, Samuel M. Maples, remained in possession until his death in July, 1941.

The heirs of the body of Susan King Maples were two daughters, Lizzie Maples, who married John Henson, and Nannie Maples, who married J. R. Maples. By partition deed, the daughter, Nannie Maples and her husband, J. R. Maples, obtained the half of the tract which included the Church Lot and the School Lot.

In March 1909, Samuel M. Maples conveyed to the School Directors for Sevier County, the "School Lot," the land involved in this litigation, but said deed was never recorded, and it is not known whether Susan King Maples joined in the deed; said deed contained a reverter clause in the event the property was not used for school purposes, and thereafter, the property was improved with a school house, and used as school property until

about 1926, when it was abandoned, and the school moved to another location.

On November 15, 1926, by warranty deed recorded in Book 52, page 288, Register's Office of Sevier County, Samuel M. Maples, then a widower, conveyed to the Trustees of complainant, and their successors in office, the School Lot which had been abandoned shortly before the date of the deed by the School Directors of Sevier County; said deed contained a recitation that the tract contained one-quarter of an acre, more or less, and, "* * * being the parcel of land conveyed by vendor herein some years ago to the School Directors of Sevier County, Tennessee, with a reverting clause in said deed, and said land having reverted to the vendor under said clause, the vendor here conveys the same to the Trustees of the above named church, to be used for church purposes; that is said church ceases to be used for church purposes, then in that event, the land herein conveyed goes and descends to my daughter, Nannie Maples, if living, and if deceased, the reverting clause is void."

After November 15, 1926, the date of this last deed, the Church had undisputed possession, use and control of the School Lot, using it in connection with the Church establishment, for outside toilets and the parking of vehicles, until some time in 1947, when the defendant, Russell Watson, objected to the use of this lot for outside toilets, and thereafter, in May 1948, undertook to cut certain timber from the lot and to grade the same, which action by Watson led to the filing of the original bill and the injunction in the present case.

Nannie Maples, the daughter of Susan King Maples and Samuel M. Maples, died in 1943, intestate, leaving two children as her sole heirs at law. These were the defendant Alice Maples Watson, and her brother, Samuel

W. Maples, and the daughter has since, by recorded deed, acquired the undivided half interest of her brother.

On these facts which were stipulated, the Chancellor held that Susan King Maples took a life estate in the School Lot under the deed of 1869, with remainder to the heirs of her body living at the time of her death, and that upon her death in 1921, title to the School Lot vested in her daughter, Nannie Maples, by reason of a partition deed, and that Samuel M. Maples, husband of Susan, and father of Nannie Maples, had no estate by the courtesy in the School Lot, since his wife held only a life estate therein; that by the deed of November 15, 1926, Samuel M. Maples undertook to convey to the Trustees of the Baptist Church, an estate in fee, to said School Lot, which deed was recorded on November 15, 1926, in warranty deed book No. 52, page 288, of the Register's Office of Sevier County, and that immediately thereafter, complainants went into complete possession and control of said School Lot, and continued in said possession and control, holding said lot openly, notoriously and adversely from November 15, 1926, for a period of approximately 21 years and 6 months, until the commencement of the present controversy. The Court accordingly decreed that title to the School Lot at the time of the institution of the present suit, had become vested in complainants, and that complainants were vested with good and indefeasible fee simple title to the land described in said deed, and referred to as the "School Lot," both under Section 8582 of the Code, and by reason of having held same adversely for a period in excess of 20 years.

The Chancellor further adjudged that the $2,000, which was the agreed value of said lot, which had been paid as a result of the condemnation proceeding by the State

into the registry of the Court, was the property of the Church, and that the defendant should pay the costs.

To this decree of the Chancellor, the defendants perfected an appeal, and have made five assignments of error. The first assignment,—that the Chancellor erred in holding that the deed of November 15, 1926, from Samuel M. Maples to the Church Trustees, conveyed an estate in fee, when he should have held that the deed purported to convey a qualified or base fee, is without merit since the deed from Maples to the Trustees purported to convey an estate in fee simple upon a condition subsequent. An ''estate in fee'' may not be an estate in fee simple absolute, free from any and every qualification or condition. Estates in fee are not thus restricted in their nature. Every estate which may pass to heirs general by descent and continue forever, is a fee; the owner having the entire property himself.

''A fee in the sense it is now used in this country, is an estate of an inheritance in law, belonging to the owner, and transmissible to his heirs. No estate is deemed a fee unless it may continue forever.'' Kent's Comm. (12th ed.) p. 3, cf. 2 Blackstone Comm., 104, 106, 109.

''The fee 'is divisible into three species: (1) fee simple; (2) conditional fee; (3) fee tail.' '' Encyl. Britannica.

The Chancellor did not hold that the Maples deed to the Church Trustees conveyed an estate in fee simple absolute, but on the contrary, was careful to hold as follows: ''* * * that the deed of November 15, 1926, from Samuel M. Maples to the Trustees of Complainants purported to convey to said Trustees an estate in fee to said 'school lot,' which deed was recorded on November 15, 1926, in Warranty Deed Book 52, page 288;''

(4, 5) The statute, Code 8582, requires only that the assurance of title purport to convey an estate in fee. The

deed from Maples to the Trustees purported to convey an estate in fee simple upon a condition subsequent, since the continuance of the estate depended solely upon the performance of the grantees in continuing to use the land for Church purposes. *Stamper* v. *Venable,* 117 Tenn. 557, 566, 97 S. W. 812; *Atkins* v. *Gillespie,* 156 Tenn. 137, 140, 299 S. W. 776; cf. *Wagner* v. *Wallowa County,* 76 Or. 453, 148 P. 1140, L. R. A. 1916F, 303. The deed of Maples to the Trustees of the Church, therefore, satisfies the requirements of Code Section 8582, for an assurance of title.

 Assignments 2 and 3 are based on the proposition that the Church abandoned the use of the School Lot for Church purposes when the Church was ousted from the lot by the State in the exercise of its sovereign power of eminent domain. No authority is cited by the appellants to support this proposition, and we are confident that none can be found. "The taking of property by eminent domain is not such a failure of the charity as to give rise to a resulting trust for the settlor. The proceeds received from the eminent domain proceedings constitute a substitute trust res." 2 Bogert—Trusts and Trustees, Section 418, p. 1281.

 On the condemnation of charitable trust property there is no failure of the trust, entitling the heirs of the settlor to an award, but rather a right to an award in the trustee. *Carmack* v. *United States,* 8 Cir., 177 F. (2d) 463. "Had the property been condemned, it would not have reverted. Its proceeds would have been invested in other property. Plaintiffs would not have been entitled to the proceeds, or any part thereof. Here the parties have done by agreement exactly what could have been accomplished by condemnation proceedings. The transaction should therefore be given the same legal

effect. Every circumstance tends to show that the trade made was a good one. Plaintiffs have the same reversionary rights in the property purchased that they had in the property sold. This conclusion works substantial justice. To hold otherwise would be inequitable." *Lutes v. Louisville & N. R. Co.,* 158 Ky. 259, 164 S. W. 792, 794.

In a New Hampshire case, a charitable trust was created by deed conveying described land with buildings thereon, to the city for free use as a public library by its inhabitants, on condition that, if any portion of the premises was used at any time for other purposes, or if any other condition of the deed was broken, the premises should revert to the grantors and their heirs, and it was held that the charitable trust did not fail because of the city's involuntary loss of the property to the State by condemnation for a State House Annex. Damages were awarded to the city in trust for library purposes, so that no resulting trust arose in favor of deceased grantor's heirs. *State v. Federal Square Corp.,* 89 N. H. 538, 3 A. (2d) 109.

Since, in our consideration of assignment of error No. 1, we have held with the Chancellor, that Maples' deed to the Trustees executed and recorded on November 15, 1926, purported to convey an estate in fee, and was sufficient assurance of title to comply with the statute, Code Section 8582, and since we have held that the Church Trustees did not abandon voluntarily, use of the property for Church purposes, assignments Nos. 4 and 5 require no further consideration, since they merely present the contrary of these two propositions.

For the reasons stated, and under the authorities cited, the decree of the Chancellor is affirmed and the appellants will pay the costs.

All concur.