**BOARD OF EDUCATION, WAPAKONETA (City), Plaintiff, v. UNKNOWN HEIRS et. Defendant.**

Common Pleas Court, Auglaize County.

No. 14861.   Decided March 12, 1954.

Edward Stroebel, Wapakoneta, for the plaintiff.

McKeever & Monahan, Wapakoneta, for the defendant St. Paul's Evangelical and Reformed Church of Wapakoneta, and Mr. A. A. Klipfel, Wapakoneta, for the defendant Maurice Howe.

(DULL, J. of Mercer County sitting by assignment in Auglaize County.)

## OPINION

By DULL, J.

This action to quiet title was submitted to the court upon the pleadings, testimony, evidence, exhibits, arguments of counsel and the memoranda of counsel for the plaintiff and for the defendant Howe.

The petition of the plaintiff embraced Lots numbered 57, 58, and 59 and 60 in the City of Wapakoneta, Ohio. However, by the pleadings and admissions of record, the issues were limited to Lot No. 59 and Lot No. 60 with the exception of a certain former alley, 16½ feet in width, at one time known as Oak Alley, extending from Mechanic Street to Main Street in the City of Wapakoneta, Ohio, between Lot No. 57 and Lot No. 58. As shown by plaintiff's exhibit 1, the plaintiff holds the fee simple title to Lot No. 57 and Lot No. 58 and no question was raised to such title.

To the petition of the plaintiff, the Board of Education of the City of Wapakoneta, Ohio, there were 5 parties defendant: (1) the unknown heirs of Peter Aughinbaugh, J. K. Wilds and Joseph Barnett (the signers of the original plat relative to the two lots in question); (2) The City of Wapakoneta, Ohio; (3) The Saint Mark's Lutheran Church of Wapakoneta, Ohio; (4) The Saint Paul's Evangelical and Reformed Church of Wapakoneta, Ohio; and (5) Maurice Howe, the vendee of the plaintiff.

The defendants unknown heirs of Peter Aughinbaugh, T. K. Wilds and Joseph Barnett (the signers of the oringinal plat relative to the two lots in question) although duly served, filed no pleadings and entered no appearances in the action.

The defendant Saint Mark's Lutheran Church although duly served, filed no pleadings and entered no appearances in the action.

The defendant City of Wapakoneta through its mayor waived the issuing and service of summons and voluntarily entered its appearance and for answer to the petition said that the allegations contained therein were true and that the prayer of the petition should be granted.

The petition of the plaintiff is brought under §11901 GC (Sec. 5303.01 R. C.) which reads as follows:

"An action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an estate or interest therein, adverse to him, for the purpose of determining such adverse estate or interest; or such action may be brought by a person out of possession, having, or claiming to have, an estate or interest in

remainder or reversion in real property, against any person who claims to have an estate or interest therein, adverse to him, for the purpose of determining the interest of the parties therein."

The petition alleges that the plaintiff owns the fee simple title and is in possession of the real property in question, the property is then described, and that the defendants claim an interest in the property adverse to the plaintiff.

The petition is sufficient according to all the requirements of law or equity with the plaintiff being the proper party to bring the action. No testimony, evidence or argument were introduced to the contrary.

"The object of the action is to test and quiet the title, and this may be done by anyone in actual possession, and the question as to whether the possession is rightful will usually be settled by the judgment as to the title. The right to bring the action is not limited by the statute to one rightfully in possession, but it may be brought by anyone in possession. The matter of right is involved in the trial of the merits of the case." **State v. Griftner, 61 Oh St at page 213.**

Hence, the contention contained in the answer and cross petition of the defendant Saint Paul's Evangelical and Reformed Church that the plaintiff was not the proper party to bring the action was given no further consideration.

Certain objections were made during the course of the trial by the defendant Saint Paul's Evangelical and Reformed Church to the admission and use of some of the exhibits. Among such exhibits were plaintiff's exhibits 3 and 4:

A History of the Wapakoneta Union School. This work is written in longhand but no author or date is given. However, on the page preceding this history is a school record of the grades and attendance of the pupils dated May 24, 1878, and signed by Maggie Cordelle, Teacher.

An Atlas of Auglaize County, Ohio, from Records and Original Surveys drawn and compiled by H. G Howland, C. E. Published by Robert Sutton, Philadelphia. This work contains an Historical Sketch of Auglaize County, Ohio, describing the early education and religious groups of the county.

"Historical facts of general and public notoriety may be proved by reputation, and that reputation may be established by historical works, of known character and accuracy. But evidence of this sort is confined in a great measure to ancient facts which do not presuppose better evidence in existence; and where, from the nature of the transaction, or the remoteness of the period, or the public and general reception of the facts, a just foundation is laid for general confidence." Morris and Gwynne v. The Lessee of Harmer's Heirs, Volumes 30—33 U. S. Supreme Court Reports, 8 Law Edition 781, 7 Peters, 554, January, 1833 Term.

On such authority and because of the age of these works the objections of the defendant were overruled and the exhibits admitted in evidence.

The pleading of the defendant City of Wapakoneta had no force or effect. The City of Wapakoneta has been divested of any interest in the lots in dispute by operation of law.

48 Volume Statutes 40 of the Laws of Ohio, passed March 13, 1850, provided in part:

"Section III The title to all real estate and other property, belonging for school purposes to any city, town, village, township or district or to any part of the same, which is or may be organized into a single school district in accordance with this act, or the act to which this is an amendment, shall be regarded in law as vested in the board of education thereof, for the support and use of the public schools therein, and said board may dispose of, sell and convey said real estate or any part of the same, by deed to be executed by the president of said board upon a majority vote for such sale at any regular meeting of the electors of said district."

Also contemporaneously effective was a partial recodification of school laws under 51 Volume Statutes 429 of the Laws of Ohio, passed March 14, 1853, wherein:

"Section IX (in part) boards of education—shall be and hereby are invested in their corporate capacity with the title, care and custody of all school houses, school house sites, school libraries, apparatus or other property belonging to the school districts as now organized, or which hereafter may be organized within the limits of their jurisdiction.";

Repealing the foregoing acts, 70 Volume Statutes 195 of the Laws of Ohio, passed May 1, 1873,

"An act for the reorganization and maintenance of Common Schools" provided under "Chapter VI Provisions Applying to All School Districts," at "Section 39. All property real or personal, which has been heretofore vested in and is now held by any board of education, or town or city council, for the use of public or common schools in any district is hereby vested in the board of education provided for in this act, having under this act jurisdiction and control of the schools in such district.";

97 Volume Statutes 354 of the Laws of Ohio, passed April 25, 1904, (Section 3972 Revised Statutes) provided:

"All property, real or personal, which has heretofore vested in and is now held by any board of education for the use of public or common schools in any district is hereby vested in the board of education provided for in this title"; (in this case, Town School District);

In the act establishing "The General Code," passed Feb. 14, 1910, Section 13767 thereof repealed the Revised Statutes, including Section 3972; however §13766 GC provided:

"Nothing contained in Section 13767 repealing a section of the Revised Statutes—shall be construed to affect a right or liability accrued or incurred thereunder—and for such purposes said sections—shall continue in full force and effect notwithstanding such repeal.";

Sec 1.01 R. C., effective October 1, 1953, provides in part:

"The enactment of the Revised Code shall not be construed to affect a right or liability accrued or incurred under any section of the General Code prior to the effective date of such enactment, or an action or proceeding for the enforcement of such right or liability."

Sec. 1.24 R. C., effective October 1, 1953, provides:

"That in enacting this act it is the intent of the General Assembly

not to change the law as heretofore expressed by the section or sections of the General Code in effect on the date of enactment of this act. The provisions of the Revised Code relating to the corresponding section or sections of the General Code shall be construed as restatements of and substituted in a continuing way for applicable existing statutory provisions, and not as new enactments."

The defendant Maurice M. Howe, the vendee of the plaintiff who has paid a part of the purchase price, was ruled a proper party.

Syllabus of **Barnes v. Christy, 102 Oh St 160:**

"Courts of equity aim to do complete justice by adjudicating and settling the rights of all parties interested in the subject-matter of the suit; and as a general rule all persons materially interested either legally or equitably in that subject-matter are proper parties, so that there may be a complete decree, which shall bind all and terminate litigation."

Further, **Sec. 11255 GC (§2307.19 R. C.)** provides:

"Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, or who is a necessary party to a complete determination or settlement of a question involved therein."

The defendant Howe in his answer alleges that there is a certain former alley, 16½ feet in width, at one time known as Oak Alley, extending from Mechanic Street to Main Street in the City of Wapakoneta, Ohio, between Lot No. 57 and Lot No. 58. No testimony, evidence, or argument were introduced to the contrary. The quieting of the title and possession to this alley is asked.

"When the street becomes vacated the public thereby surrenders, or more properly speaking, legally abandons the public use thereof for travel, but the private or special use or easement, adheres to the abutting lots, and becomes part and parcel of them as by accretion. so as to preserve the right of ingress and egress to the lots over the land that formerly formed the street or part thereof. The reason that a street when vacated, becomes a part of the abutting lots, is not because the owner of the lot owned the fee of the street, but because it must go there by necessity, to preserve his easement of ingress and egress, which in many cases is a valuable property right, and without which the lots might be of little value. The street being vacated and abandoned, the public no longer owns it, and it must either revert to the original owner, or adhere to the abutting lots as by accretion. As the original owner is presumed to have received full value for the street when he sold the lots, there is no just reason why he should have the street, when vacated, restored to him. And as the lot owners and those in the line of title have paid an increased price for lots by reason of the easement in the street, it is only just that when the street becomes vacated, the easement should be preserved to them by adding the vacated street to the lots, and therefore this doctrine of accretion in such cases has been adopted in this state, and generally elsewhere." **Hamilton, Glendale & Cincinnati Traction Co. v. Parish, 67 Oh St at page 190.**

The undisputed testimony and evidence shows that this alley has not been used by the public for travel for a period in excess of seventy five

years inasmuch as it was covered by a school building situated on Lot No. 57 and Lot No. 58 for that same period of time.

Hence, the plaintiff, as the owner of the abutting lots, becomes the owner of the alley, at one time known as Oak Alley, extending from Mechanic Street to Main Street in the City of Wapakoneta, Ohio, between Lot No. 57 and Lot No. 58.

Part of the real issues in this action were raised by the answer and cross petition of the Saint Paul's Evangelical and Reformed Church, hereinafter referred to as the defendant church.

In its pleading, the defendant church further alleges that the Directors of School District Number One in the town of Wapakoneta, Ohio, to which the plaintiff is the successor in title, on April 27, 1849, conveyed by a duty recorded quit-claim deed Lot No. 60 to the German Lutheran Church of Wapakoneta, Ohio, to which the defendant church is the successor.

In its pleading, the defendant church further alleges that the Lutheran Church of Wapakoneta, Ohio, the predecessor of the defendant church, on April 27, 1849, conveyed by a duly recorded quit-claim deed Lot No. 59 to School District Number One, in the town of Wapakoneta, Ohio, the predecessor of the plaintiff.

In its pleading, the defendant church further alleges that "it was not the intention of the parties" that the defendant church should lose and relinquish its title to both Lot No. 59 and Lot No. 60. It is further alleged that for such reason if the defendant church is not the owner of Lot No. 60 by virtue of the quit-claim deed from plaintiff's predecessors in title, then the defendant church is the owner of Lot No. 59.

In its pleadings, the defendant church further alleges that the plaintiff has neither the right nor the power to sell the lots in dispute.

The remainder of the real issues was brought forth in the trial of the case through the introduction of testimony and evidence.

The original plat of the Town of Wapakoneta, Ohio, Plaintiff's Exhibit 2, reads as follows:

"The proprietors donated all Streets and Alleys for Public Highways and Lots 59 and 60 for a Meeting-House and School-House. January 25th A. D. 1833.

Peter Aughinbaugh
J. K. Wilds
Joseph Barnett"

Hence, by the original plat the defendant church lays a claim to the ownership of Lot No. 59.

Thus, the defendant church has two claims of ownership:

(1) Ownership of Lot No. 59 under the original plat; and

(2) Ownership of Lot No. 60 by virtue of a quit-claim deed from plaintiff's predecessor in title.

It is the considered opinion of the court that that original plat represented a dedication of Lot No. 59 and Lot No. 60 for public uses. But was it a statutory or common law dedication? The cases on this point lend themselves to judicial confusion.

"The Statutory dedication, under the laws in force in A. D. 1830, operated to transfer the estate by way of grant, requiring no assent on the

part of the public. and to be effective as a dedication, the solemnities required by the statute, as to acknowledgment and recording, must be complied with.

A defective dedication under the statute is evidence, as an act in pais, of a dedication at common law by the owner.

Dedications of land to public uses at common law in general, operate by way of estoppel, and not as grants or transfers of an interest.

To constitute a valid dedication of a street or highway at common law, there must be not only a dedication to public uses by the owner, but also an acceptance of such dedication by the public, and these may be shown by the acts and declarations of the parties and the surrounding circumstances." Syllabus of **Fulton v. Mehrenfeld, 8 Oh St at page 440.**

"The first Act, to provide for the recording of town plats, by the Ohio General Assembly, was dated February 14, 1805, effective June 1, 1805 and was virtually a re-enactment of the foregoing.

Thereafter, said Act of 1805 was repealed and a new, changed and much more extensive law was enacted and became effective June 1, 1831, in replacement, and included provisions similar to those above set forth, excepting that in Section 6 thereof it was provided that:

"such map or plat so recorded, shall be deemed a sufficient conveyance to vest the fee of the parcel or parcels of land therein set forth and described, or intended to be for streets. alleys, ways, commons, or other public uses, in such city or town corporate, to be held in the corporate name thereof, in trust to and for the uses and purposes so set forth and expressed or intended." **Zanesville v. Zanesville Canal and Manufacturing Company et, 60 Abs at page 130.**

"One of the essential elements of a common-law dedication of property to a public use is the intention of the owner of the property to so dedicate it.

That intention may be expressed or implied from circumstances.

A common law dedication of an owner's property to a public use has the same effect as an express grant of such property to such a use; and the law requires that there be clear evidence of the owner's intention to dedicate such property to such a use." Syllabus of **Hicksville v. Lantz et, 153 Oh St at page 421.**

"Where an owner of a subdivision files with the county recorder a plat thereof, delineating thereon numerous lots, together with streets and alleys which are duly dedicated to the public, and such plat also contains a numbered lot designated "Children's Playground." of which there is no specific statutory dedication, the one of two necessary elements of a common-law dedication, i. e., the intention of the dedicator to make dedication. is clearly manifested by delineation of the playground by lines and lot number, accompanied with the use of such terminology. the intention being confirmed, subsequent to the recordation, by such owner circulating printed matter containing the subdivision plat showing the playground as a part thereof. and by his agents' representations to prospective lot purchasers that the playground was a part of such subdivision intended to be used permanently for such purposes.

In such case, the other necessary element of common-law dedication, acceptance or user by the public, is sufficiently shown where the weight of the testimony discloses that use of the playground by the public was quite general in the light of the number of persons who could be expected to so use it, the acceptance of the dedication by a public authority being unnecessary." Syllabus of **Scott et, v. Snyder, 73 Oh Ap at page 424.**

There was evidence presented that the statutory requirements of 1833 were met by the recorders of the original plat, bearing out the contention of the plaintiff, that if there was a dedication it was a statutory one.

However, if the dedication were not statutory, there was evidence that it was one at common law.

"In order to constitute or effect a dedication of property to a public use at common law, except in those cases where the dedication is based upon a technical estoppel, three things are necessary. namely: The existence of an intention on the part of the owner to make such dedication; an actual offer on the part of the owner, evidenced by some unequivocal act, to make such dedication; and the acceptance of such offer by or on behalf of the public.

A dedication, at common law, may be either express or implied It is express when the animus dedicandi is expressly declared; it is implied when it arises by operation of law from the acts of the owner. No particular words or ceremonies, or form of conveyances, are necessary. Anything which fully demonstrates the intention of the donor, or the acceptance by the public, is effectual. It is not necessary for a plat or other instrument by which an offer of dedication is made expressly to declare the object of the proposed use to be public, as distinguished from a private usage, it being sufficient if such intent be shown by the surrounding circumstances. As a general rule, however, the acts relied upon as showing an intention to make a dedication must be clear and unequivocal." **13 O. Jur. at page 738.**

The words contained in the original plat are evidence of an intention on the part of the proprietors to make a dedication The recording of the plat can be viewed as an unequivocal act showing an actual offer to make a dedication. And there was some evidence of a church building being erected by a religious organization in approximately 1848 on one of the lots in question which can be viewed as the acceptance of the offer to dedicate by the public.

But whether there was a statutory or common law dedication or both, there was a grant or conveyance of land from the proprietors to the public. "A dedication of property to a public use may be effected by means of a deed of conveyance, or by a reservation therein, or by a will, followed by acceptance thereof by or on behalf of the public." **13 O. Jur., at page 740.** See, also, **State, ex rel. v. Smith, 87 Oh Ap at pages 517 and 518.**

There is authority that by a dedication of land to a public use a fee simple title is conveyed.

"When a conveyance of land owned in fee simple is made to and ac-

cepted by a municipality in perpetuity for use as a park, and there is no provision for forfeiture or reversion, the entire estate of the grantor is divested, and the title of the municipality thereto is not a determinable fee but a fee simple." Syllabus of **Miller et, v. Brookville, 152 Oh St** at **page 217.** In all fairness it must be stated that from this decision two justices dissented and one did not participate.

"A deed of conveyance for one-half acre of land having been made and delivered by a grantor to two grantees upon consideration of twenty dollars, as follows:

'To have and to hold the above granted and bargained premises with the appurtenances thereof unto them, the said grantees or their succesors in office, forever, to their own proper use and behoof, but it is expressly to be understood that the said grantees nor their successors in office, shall not at any time use or occupy the aforesaid premises for any other purpose or purposes than whereon to erect or build religious meeting houses or parsonages, and for cemetery or burying ground, and that the said cemetery or burying ground shall be free and common to and for all religious denominations who may desire to occupy the same for the purpose of interring their dead, under the immediate direction and regulations of the said grantees or their successors in office, but this reservation shall not extend to inhibit or prevent the fencing, planting trees or shrubs, making tombs, monuments or other ornamental improvements,' and a street having been located by the village upon a strip of said land thirty feet wide, for which the successors of said grantees received five hundred dollars, and an action having been brought by the heirs of the grantor against the village for the recovery of the value of said strip of land: Held—that said heirs had no title to said strip of land, and no right to the value thereof.

That as said deed had no words of forfeiture or re-entry, the diverting of said lands to uses and purposes, other than those expressed in the deed, did not in legal effect revest title to said lands in the grantor, or his heirs." Syllabus of The **Village of Ashland v. Greiner et, 58 Oh St at page 67.**

"Such a deed conveying the land to the 'trustees—and their successors in office forever, to be held in trust' for the church, and providing that 'the land is to be returned to the original owners' in the event that it should ever cease to be used for church purposes, conveys an absolute fee-simple title to the trustees" Syllabus of **First New Jerusalem Church of Lakewood v. Singer et, 68 Oh Ap at page 119.**

"A devise of real estate to a religious society 'to be used as a parsonage,' but with no provision for forfeiture or reversion, conveys all of the estate the testator has therein to the devisee, and the failure of the devisee to use the property as a parsonage will not cause the title to revert to the heirs of the testator." Syllabus of **First Presbyterian Church of Salem v. Tarr et, 63 Oh Ap at page 286.** See, also, Fulton v. Mehrenfeld, supra.

If a fee simple title is conveyed by a dedication of land to a public use, the issues are readily dissolved. Under the original plat, the plaintiff's predecessor received a fee simple title to Lot No. 60 and the prede-

cessor of the defendant church received a fee simple title to Lot No. 59. Then in 1849, plaintiff's predecessor conveyed its fee simple title to Lot No. 60 to the predecessor of the defendant church and the predecessor of the defendant church conveyed its fee simple title to Lot No. 59 to the plaintiff's predecessor. Afterwards, the plaintiff occupied Lot No. 59 under such conveyance from the defendant church and occupied Lot No. 60 adversely for more than seventy-five years in defiance of its conveyance of Lot No. 60 to the predecessor of the defendant church. The evidence of adverse possession of Lot No. 60 by the plaintiff for more than twenty-one years being, in the opinion of the court, clear and convincing. And a grantor can claim adversely against his grantee.

"As a rule, continued open and notorious possession by a grantor will be deemed to be adverse where it is of such character as to be entirely inconsistent with the rights of the grantee. Thus the grantor's entry after conveyance must be deemed to be adverse where there is no evidence that he entered for or under the grantee, but where he acted in all respects as the sole owner, making leases, receiving rents, paying taxes, improving the property, etc. So the refusal by a grantor, in possession of the premises, to surrender them to the grantee, is notice to the latter that he must proceed to vindicate his rights, and, if he delays in doing so beyond the statutory period, his deed cannot prevail against his grantor's adverse possession." **Rosenstihl v. Cherry, 114 Oh St** at **page 413.**

"A grantor of real estate by deed containing convenants of warranty is not estopped from claiming a prescriptive right to the use of a portion of the land conveyed as an easement, where such use is open, notorious, continuous and adverse for a period of more than twenty-one years after such conveyance." Syllabus of **Kimball et, v. Anderson et, 125 Oh St** at **page 241.**

Therefore, the plaintiff still holds the fee simple title to Lot No. 59 by virtue of the conveyance from the predecessor of the defendant church and a good title to Lot No 60 that should be quieted on the basis of adverse possession, if a fee simple title is conveyed by a dedication of land to a public use.

But there is also authority—perhaps, the weight of authority—that by a dedication of land to a public use a fee simple title is conveyed but subject to the public use or uses to which the land was dedicated.

"Public streets, squares, landings and grounds are held in trust for the public, and being so held they are, for the use for which they were dedicated or acquired and subject to the property rights of the abutting owners, under the absolute control of the legislative power of the state." Syllabus of **Louisville & Nashville Railroad Company v. City of Cincinnati, 76 Oh St** at **page 481. City of Galion v. City of Galion et, 154 Oh St** at **page 508.** Zanesville v. Zanesville Canal and Manufacturing Company, et al., supra. Although it is concerned primarily with lands taken by appropriation, see **McMechan v. Board of Education, 157 Oh St** at **page 251** where it cites **Board of Education of Incorporated Village of Van Wert v. Inhabitants of Said Town, 18 Oh St 221.**

A study of these and other cases reveals an almost indiscriminate

use of such legal labels, brands or tags as "fee subject to a use", "fee held in trust", "determinable fee", "a base or qualified fee" and others. And although the legal profession has made almost a fetish of these and similar words, they hold no magic in themselves. Rather, they lead to meaningless by-paths and lanes of confusion with dead ends instead of acting as guide posts to understandable and equitable solutions of every day problems.

Be that as it may, if a fee simple title subject to a public use is conveyed by a dedication of land to a public use, the exchange in 1849 of Lot No. 59 and Lot No. 60 between the plaintiff's predecessor and the predecessor of the defendant church made no difference. The public use went right along with the fee simple title.

"Where a legal estate is granted, or devised, to trustees, without words of perpetuity, upon trusts of perpetual duration, there is much reason and authority for holding that the legal estate, taken by the trustees, is commensurate with the trust; and therefore, a fee. Miles v Foster, 10 Ohio Reports 1, which seems to recognize a contrary doctrine, doubted.

But wherever the legal title goes, upon the death of the grantee, or devisee, it remains charged with the trust." Syllabus of **Williams et, v. First Presbyterian Society in Cincinnati et, 1 Oh St at page 478.** See, also, **In re Estate of Hall Southwick v. Koch and Neil, 60 Abs at page 527.**

It was clearly the intention of the parties that the use should follow the title by the wording of the deeds exchanged in 1849

The quit-claim deed dated April 27, 1849, from the Trustees of the Lutheran Church in the Town of Wapakoneta, Ohio, to the School Directors of District No. 1 in the Town of Wapakoneta, Ohio. of Lot No 59 contains the following words: "to have and to hold said premises"—"as directors of the said School District and their successors in office for a school house lot forever."

The quit-claim deed dated April 27, 1849, from the Directors of School District No. 1 in the Town of Wapakoneta, Ohio, to the Trustees of the Lutheran Church in the Town of Wapakoneta, Ohio, contains the following words: "for the use of said church and to them as such trustees whereon to build a meeting house" of Lot No. 60 "to have and to hold to them"— (the trustees) "and to their successors in office for the use above expressed forever."

Then after the exchange in 1849, the plaintiff's predecessor held Lot No. 59 subject to a public use and the predecessor of the defendant church held Lot No. 60 subject to a public use.

However, by abandoning the use of the lands sometime prior to 1875, the predecessor of the defendant church lost all its claim to Lot No. 60 under the conveyance from the plaintiff's predecessor (or to Lot No. 59 under the original plat).

The testimony and evidence were clear and convincing of the nonuse by the defendant church or its predecessor from a date sometime prior to 1875. And the failure to assert any claim of ownership from that time until the institution of the present action clearly reveals the intention of the defendant church or its predecessor to abandon the lands.

"To constitute abandonment, nonuse of property must be coupled with intention to relinquish or abandon it." **1 O. Jur 2d** at **page 8.**

"Under a claim of abandonment of a road in a municipal corporation, proof that no work had been done on the road by the public authorities for fifteen years; that the road was at times in bad condition and impassable; that it passed over a steep hill; was difficut of use; that a new road had been established in the vicinity intended to take its place; that for eleven years before suit was brought travel had been substantially diverted to the new road, and that portions of the old road had been fenced in, are not sufficient to show abandonment by the public.

If non-user of such road may work an abandonment of it, the non-user must be shown to have extended over a period of twenty-one years." Syllabus of **Nail & Iron Company v. Furnace Company, 46 Oh St** at **page 544.**

There are authorities that hold that upon abandonment of the dedicated use the title reverts to the heirs of the dedicators even in the absence of words of forfeiture or reversion.

"That if the use created by the dedication were abandoned, or should become impossible of execution, the premises would revert to the dedicators or their representatives, and that, without their consent, they could not be divested of their contingent right of reversion by an absolute alienation." Syllabus of **Board of Education of the Incorporated Village of Van Wert v. The Inhabitants of Said Town, Supra.**

"Warranty deed to land in 1888 for a valuable consideration to trustees of a named church 'as long as used for church purposes,' containing like habendum clause running to such church, but with no stipulation for forfeiture or reversion, passed a fee determinable upon abandonment of such use with immediate right of entry to grantors' heirs, since clauses were limitations and not conditions subsequent (§§8510-1 and 10051 GC)".

Syllabus of **Schurch et, Trustees, v. Harraman et, 47 Oh Ap** at **page 383.**

"A deed conveying to a board of education a small lot of ground and containing a clause 'To have and to hold—so long as the same shall be occupied as a site for a schoolhouse and no longer' clearly expresses an intention on the part of the grantor to provide for a reverter and forfeiture and conveys a tenure limited to the continued use for school purposes." Syllabus of **Board of Education of Lebanon Village School District v. Hollingsworth et, 56 Oh Ap** at **page 95.** It is worthy of note that in this case the Board of Education had abandoned the use of the premises for only four years before the action was brought. See, also, McMechan v. Board of Education. supra.

The evidence and testimony clearly reveals that the plaintiff held Lot No. 60 (if the exchange of lots in 1849 is recognized, or Lot No. 59, if not recognized) adversely for more than seventy-five years against the heirs of the proprietors, if there was a reversion of title to them. Therefore, the plaintiff holds a good title that should be quieted on the basis of adverse possession to Lot No. 60 (if the exchange of lots in 1849 is recognized, or Lot No. 59, if not recognized) if there was a fee simple

title subject to a public use conveyed by the dedication and there was a reverter of the title upon the abandonment of the dedicated use to the heirs of the proprietors in the absence of words of forfeiture or reversion.

However, if a fee simple title subject to a public use was conveyed by the dedication the plaintiff still holds Lot No. 59 subject to a public use (if the exchange of lots in 1849 is recognized, or Lot No. 60, if not recognized) as the predecessor of the defendant church at one time held Lot No. 60 (if the exchange of lots in 1849 is recognized, or Lot No. 59, if not recognized).

But to what public use were Lot No. 59 and Lot No. 60 subject? The original plat contains the words "Meeting House" and "School-House." There are no words, nor was there any evidence, that the words "Meeting-House" meant a **religious** "Meeting-House". A place for holding town meetings might have been intended. Nor were there words, nor was there any evidence, that the words "Meeting-House" and "School-House" meant two buildings or one. Further, there was lacking in the testimony and the evidence any clear and convincing connection between any occupying religious organization and the defendant church. On the other hand, the identity of the original occupying school authorities with the plaintiff was admitted. Hence, there are grounds for believing that the school might be the only beneficiary intended by the dedication

"Where there is an express dedication by deed but with an ambiguity as to the beneficiary of such dedication the court must look to the intention of the dedicators as may be proved directly or inferentially, and in doing so the court has the right to determine how other persons considered the dedication.

Where in a dedication an ambiguity exists as to which of two possible groups was intended as the dedicatee, and it cannot be manifested by the intention of the dedicator, then if the smaller group is inclusive of the larger one, the larger group will be considered the beneficiary of the dedication." Syllabus of **Carter v. Swan, 66 Abs** at **page 526.**

But granting the connection between the original occupying religious organization with defendant church and that it was one of the beneficiaries of the dedication, were the words of dedication in the original plat (or the words of the deeds exchanged in 1849) sufficient to create a use that would cause a reversion of Lot No. 59 or Lot No. 60 to the heirs of the proprietors in the absence of words of forfeiture or reversion? The weight of authority says no.

"When a conveyance of land owned in fee simple is made to and accepted by a municipality in perpetuity for use as a park, and there is no provision for forfeiture or reversion, the entire estate of the grantor is divested, and the title of the municipality thereto is not a determinable fee but a fee simple." Syllabus of Miller et al. v. Brookville, supra.

"Where a quit-claim deed, for valuable consideration, conveys to trustees of an unincorporated church association certain real property, 'To have and to hold—unto the said guarantees and their successors—so long as said lot is held and used for church purposes,' without any provisions for forfeiture or reversion, such statement is not a condition

or limitation of the grant. Since the deed contains no provision for reversion or forfeiture, all of the estate of the grantor was conveyed to the grantees." Syllabus of **In re Matter of Copps Chapel Methodist Episcopal Church, 120 Oh St at page 309.**

"A deed of conveyance for one-half acre of land having been made and delivered by a grantor to two grantees upon consideration of twenty dollars, as follows:

'To have and to hold the above granted and bargained premises with the appurtenances thereof unto them the said grantees or their successors in office, forever, to their own proper use and behoof, but it is expressly to be understood that the said grantees nor their successors in office, shall not at any time use or occupy the aforesaid premises for any other purpose or purposes than whereon to erect or build religious meeting houses or parsonages, and for cemetery or burying ground, and that the said cemetery or burying ground shall be free and common to and for all religious denominations who may desire to occupy the same for the purpose of interring their dead, under the immediate direction and regulations of the said grantees or their successors in office, but this reservation shall not extend to inhibit or prevent the fencing, planting trees or shrubs, making tombs, monuments or other ornamental improvements,' and a street having been located by the village upon a strip of said land thirty feet wide, for which the successors of said grantees received five hundred dollars, and an action having been brought by the heirs of the grantor against the village for the recovery of the value of said strip of land: Held—That said heirs had no title to said strip of land, and no right to the value thereof.

That as said deed had no words of forfeiture or re-entry, the diverting of said lands to uses and purposes, other than those expressed in the deed, did not in legal effect revest title to said lands in the grantor, or his heirs." Syllabus of The Village of Ashland v. Greiner et al, supra. See also First New Jerusalem Church of Lakewood v. Singer et al; First Presbyterian Church of Salem v Tarr et al, supra.

"In general, however, the courts of Ohio have adopted a middle ground by refusing to impose any arbitrary requirement of particular language but nevertheless have required that there be a clearly expressed intention to convey only a determinable fee. The most significant criterion, as in other state, has been the intention of the grantor Of course, the clearest evidence of an intention to create a determinable fee may be found in conveyances where there has been a coupling of one of the typical phrases before-mentioned ('so long as' or 'until' or 'during.') with a clear and definite expression of a possibility of reverter **May v. Board of Education, 12 Oh Ap 456** (1920). But when anything less than that appears, i. e., where a use is specified but there is no express reservation of a possibility of reverter, as in the principal case, there arises a more difficult problem of construction upon which the courts may disagree. The Ohio cases have held in accordance with the general rule before-mentioned that the mere expression of a purpose will not of and by itself create a determinable fee Volume 4, Number 1 Ohio State Law Journal at pages 107 and 108.

Hence, the plaintiff holds a fee simple title to Lot No. 59 (if the

exchange of lots in 1849 is recognized, or Lot No. 60 if not recognized) as the predecessor of the defendant church at one time held a fee simple title to Lot No. 60 (if the exchange of lots in 1849 is recognized, or Lot No. 59, if not recognized) which was lost to the plaintiff on the basis of adverse possession (See Rosenstihl v. Cherry and Kimball et al. v. Anderson et al., supra) even if the Lots were held subject to public use because of the lack of words of forfeiture or reversion in the words of dedication in the original plat (or in the words of the deeds exchanged in 1849).

Therefore, under the theory of a dedication wherein the plaintiff's predecessor and the predecessor of the defendant church took a fee simple title, the plaintiff holds a fee simple title to Lot No. 59 under the conveyance from the predecessor of the defendant church and good title that should be quieted to Lot No. 60 on the basis of adverse possession.

Again, therefore, under the theory of a dedication wherein the plaintiff's predecessor and the predecessor of the defendant church took a fee simple title subject to a public use, the plaintiff holds a fee simple title to Lot No. 59 (if the exchange of lots in 1849 is recognized or Lot No. 60, if not recognized) and a good title that should be quieted to Lot No. 60 (if the exchange of lots is recognized, or to Lot No. 59, if not recognized) on the basis of adverse possession for more than twenty-one years against the heirs of the proprietors as well as against the defendant church and its predecessor.

Inasmuch as this is an action to quiet title, and a fee simple title is being quieted in the plaintiff, the court does not feel it is necessary to pass upon the plaintiff's right or power to sell the lots in question. The right or power to sell land always has been considered to accompany the fee simple title as long as such sale is according to law. There was no evidence or testimony that the sale of the lots in question was done not according to law.

Therefore, it is hereby ordered, adjudged and decreed that the fee simple title and the possession be quieted in the plaintiff to the alley at one time known as Oak Alley, extending from Mechanic Street to Main Street in the City of Wapakoneta, Ohio, between Lots No. 57 and 58 against any interests or claims of the defendants or any parties either persons or corporations, claiming by, through or under them

It is further hereby ordered, adjudged and decreed that the fee simple title and the possession be quieted in the plaintiff to Lot No. 59 and Lot No. 60 in the City of Wapakoneta, Ohio, against any interests or claims of the defendants or any parties, either persons or corporations, claiming by, through or under them.

The costs of this action are to be divided equally among the plaintiff, the defendant City of Wapakoneta, Ohio, the defendant Saint Paul's Evangelical and Reformed Church of Wapakoneta, Ohio, and the defendant Maurice Howe.

Exceptions to these findings and conclusions are granted to all parties which have filed pleadings in this action.

Let counsel for the plaintiff draft and submit a journal entry in accordance with these findings and conclusions.