STATE OF NEW JERSEY, BY THE STATE HIGHWAY COMMISSIONER, PLAINTIFF-RESPONDENT, v. AUBURN F. COOPER, SURVIVING TRUSTEE UNDER THE LAST WILL AND TESTAMENT OF SARAH E. EDREHI, DECEASED; JOSEPH CUMMINS; AUBURN F. COOPER, INDIVIDUALLY AND AS SURVIVING EXECUTOR UNDER THE LAST WILL AND TESTAMENT OF SARAH E. EDREHI, DECEASED; MARY FRANCES KNOWLES; ALBERTINA COOPER; MARION P. DEBUS; FREDERICK DEBUS; ABIGAIL COOPER; BOROUGH OF FORT LEE, IN THE COUNTY OF BERGEN, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS-APPELLANTS.

Argued February 18, 1957—Decided May 6, 1957.

Mr. *John B. O'Neil* argued the cause for defendant-appellant Joseph Cummins (*Messrs. Milton, McNulty & Augelli,* attorneys; *Mr. Charles J. Milton,* of counsel).

Mr. *William V. Breslin* argued the cause for defendants-appellants Auburn F. Cooper, *et al.*

Mr. *Gerald E. Monaghan* argued the cause for defendant-appellant Borough of Fort Lee, *etc.* (*Messrs. Leyden and Monaghan,* attorneys).

Mr. *David D. Furman,* Deputy Attorney-General, argued the cause for the plaintiff-respondent (*Mr. Grover C. Richman, Jr.,* Attorney-General of New Jersey, attorney).

The opinion of the court was delivered by

JACOBS, J. The Law Division rendered a declaratory judgment in which it determined that the defendant Borough of Fort Lee was entitled to no compensation whatever and that the individual defendants were entitled to only nominal compensation by reason of the State Highway Commissioner's taking of the lands described in the complaint. The defendants appealed to the Appellate Division and we certified on our own motion.

On July 30, 1851 a "map of the property of Joseph Coyte near Fort Lee in the Township of Hackensack in the County of Bergen and State of New Jersey (known as the Village of Coytesville)" was filed with the Clerk of Bergen County. The property was divided into building lots and an area of approximately 2.6 acres, bordering on a street then named Palisade Road (now Hudson Terrace) and located between lots 669 and 670, was designated as a "Public Square." The lots were sold in due course and for more than a century the Public Square has been devoted to public use. The Borough of Fort Lee was incorporated in 1904 and thereafter maintained the area as a tax exempt public park in which persons could stroll near the Palisades Cliff and see the New York skyline. The park was bounded on its westerly side by Hudson Terrace where masonry piers and a chain fence had been installed. Sidewalks extended toward an outlook point along the cliff and there was a cannon, a flag pole, and other minor miscellanea in the park.

In the course of the construction of the Palisades Interstate Parkway, the State Highway Commissioner determined that it was necessary "to acquire for public use for State highway purposes a fee simple absolute pursuant to Chapter 112 of the Laws of 1951, *N. J. S. A.* 27:7–22.2" in the aforementioned park area, and on May 21, 1954 he filed a condemnation complaint seeking the appointment of "commissioners in accordance with Chapter 20 of the Laws of 1953, *N. J. S. A.* 20:1–1 *et seq.*" Commissioners were appointed and several orders extending the time for the filing of their report were entered. A settlement offer of $40,000 to the individual defendants, as successors in interest of Joseph Coyte was at one time made without prejudice but was later withdrawn because of a legal opinion from the Attorney-General's office advising that there were decisions indicating that the individual defendants were entitled to no compensation or only nominal damages. In the meantime the State Highway Department has taken legal possession of the entire tract, has completed a high speed limited access highway which (including lawns and dividing areas)

occupies about five-sixths of the park area. The highway runs between Hudson Terrace and the Palisades Cliff and consists of two paved lanes (each about 50 feet) separated by grass safety islands. A fence bars direct access from Hudson Terrace, and although a strip of land (ranging from about 50 to 100 feet and approximating about one-sixth of the original park area) along the edge of the Palisades Cliff has been left in its former condition, it can be reached only indirectly by way of an overpass some distance away.

On September 13, 1955 the State Highway Commissioner filed a complaint in which he sought a declaration that the individual defendants, as successors in interest of Joseph Coyte, and the defendant Borough of Fort Lee, are not entitled to compensation by virtue of the taking of the lands described in the complaint. Answers and cross-claims were filed and thereafter the State Highway Commissioner moved for summary judgment on the basis of supporting affidavits. Answering affidavits were filed and on July 2, 1956 Judge Waesche filed an opinion in which he expressed the view that the Borough of Fort Lee was entitled to no compensation and that the individual defendants were entitled to only nominal compensation. On August 21, 1956 a formal declaratory judgment was entered and notice of appeal therefrom was filed in due course. No one before us has raised any question as to the procedural propriety of the declaratory judgments action, although the individual defendants have urged that summary judgment was inappropriate since there were disputed questions of fact. However, as we now view the matter, the circumstances which are here material are not in dispute and the pending condemnation proceeding may justly be permitted to proceed in regular course, under the guidance of the legal principles which are hereinafter set forth.

▮ Many New Jersey cases have dealt with instances comparable to the 1851 designation of the Public Square by Joseph Coyte. See *Trustees of M. E. Church, Hoboken, v. Mayor, etc., of City of Hoboken,* 33 *N. J. L.* 13 (*Sup. Ct.* 1868) ; *Price v. Inhabitants of City of Plainfield,* 40 *N. J. L.*

608 (*E. & A.* 1878); *Mayor and Council of City of Bayonne v. Ford,* 43 *N. J. L.* 292 (*Sup. Ct.* 1881); *Weger v. Inhabitants of Delran Twp.,* 61 *N. J. L.* 224 (*E. & A.* 1897); *Fessler v. Town of Union,* 67 *N. J. Eq.* 14 (*Ch.* 1904), affirmed 68 *N. J. Eq.* 657 (*E. & A.* 1905); *Belmar v. Barnett,* 77 *N. J. L.* 559 (*E. & A.* 1909); *Long Branch v. Toovey,* 104 *N. J. L.* 335 (*E. & A.* 1928); *Highway Holding Co. v. Yara Engineering Corp.,* 22 *N. J.* 119, 125 (1956). In their light it may no longer be questioned that, by his conduct, Mr. Coyte must be taken to have intended to dedicate the area as a public place for recreation, relaxation and rest. See *Price v. Inhabitants of City of Plainfield, supra,* 40 *N. J. L.,* at *page* 613. *Cf. Haven Homes v. Raritan Tp.,* 19 *N. J.* 239, 246 (1955). In his day he appropriately referred to it as a public square, though in later days it came to be known as Coytesville Park. He undoubtedly understood and desired that the area would be available to the public generally, while aware that for the most part it would benefit the residents of the community and particularly those who occupied the adjacent and nearby lots which he was in the process of selling. See *Borough of Fenwick v. Town of Old Saybrook,* 133 *Conn.* 22, 47 *A.* 2d 849, 853 (*Sup. Ct. Err.* 1946) where the court pointed out that a park is "primarily for the benefit of the inhabitants of the municipality in which it exists" and "also for the use of the general public."

That there was legal acceptance of the area as a public square or park is amply evidenced by the exercise of municipal dominion and the long public user; after acceptance the municipal authorities came under a duty to maintain it for the public benefit. See *Sarty v. Millburn Tp.,* 28 *N. J. Super.* 199 (*App. Div.* 1953). The interest of the municipality has been described as "a sort of secondary title in trust for the purposes of the dedication, while the bare legal title remains in the dedicator in trust for the use expressly or impliedly declared in the dedication." *Hill v. Borough of Belmar,* 3 *N. J. Misc.* 254, 256 (*Sup. Ct.* 1925); Pitney, V. C. in *Fessler v. Town of Union, supra,*

67 *N. J. Eq.,* at *page* 22. Earlier, in *Trustees of M. E. Church, Hoboken, v. Mayor, etc., of City of Hoboken, supra,* Justice Depue had set forth the relationship as follows:

"The respective interests of the parties, as viewed in all the cases, seem to be this: the fee remains in the original proprietor; the easement, or privilege of using it according to the effect of the dedication, is in the whole community or public; the corporation of the city or town in which the square is, have, by virtue of their corporate authority, power to regulate the public use of it, and may be regarded as representatives of the public for the purpose of maintaining suits in equity or at law, for the vindication of the public right. 2 *Smith L. Cases* 240.

But the power of the local corporate authorities is vested in them only as the representatives of the public, and for the protection and regulation of the public use. They cannot sell the lands so dedicated, nor release or extinguish the uses for which they were dedicated, nor employ them in any way variant from the purposes for which they were designed. But within the limits of the purposes and uses for which the dedication is made, to regulate the use, the authority of the local corporate authorities is unlimited, against which no mere private right can be set up. *Com. v. Alburger,* 1 *Whart.* [*Pa.*] 469, 485; *Rung v. Shoneberger,* 2 *Watts* [*Pa.*] 23, 25; *Com. v. Bowman,* 3 *Barr.* [*Pa.* 202] 203; *Com. v. Rush,* 2 *Harris* [*Pa.*] 186; *Langley v.* [*Mayor, etc., of Town of*] *Gallipolis,* 2 *Ohio St.* 107; *Wash. on Easements* 155–6; 2 *Sm. L. Cases,* 232, 241–2; *Still v. Trustees of* [*Village of*] *Lansingburgh,* 16 *Barb.* [*N. Y.*] 107; *Alves* [*'Ex'rs*] *v. Town of Henderson,* 16 *B. Mon.* [*Ky.* 131] 169."

At the moment of the taking by the State Highway Commissioner this much was clear: the individual defendants had the bare legal title but they had no right to use and enjoyment of the premises, whereas the public did actually have such right to use and enjoyment, with the borough under a fiduciary obligation to protect it. The individual defendants advance the contention that upon the taking the right to use and enjoyment automatically reverted to them, and they rely on judicial expressions to the effect that upon discontinuance of the dedicated use the full fee reverts to the dedicator. See *City of Newark v. Watson,* 56 *N. J. L.* 667, 675 (*E. & A.* 1894). But those expressions are generally found in cases where the local authorities voluntarily abandoned the dedicated use and counsel have not cited any

pertinent instances where, as here, there was no such abandonment but the lawful intervention of a paramount sovereign authority. *Cf. Woodville v. United States,* 152 *F.* 2d 735, 737 (10 *Cir.* 1946), *certiorari* denied 328 *U. S.* 842, 66 *S. Ct.* 1021, 90 *L. Ed.* 1617 (1946); *State v. Federal Square Corporation,* 89 *N. H.* 538, 3 *A.* 2d 109, 113 (*Sup. Ct.* 1938); *First Reformed Dutch Church of Gilboa, N. Y. v. Croswell,* 210 *App. Div.* 294, 206 *N. Y. S.* 132 (*App. Div.* 1924), appeal dismissed 239 *N. Y.* 625, 147 *N. E.* 222 (*Ct. App.* 1925). Indeed, in the instant matter the borough is still seeking to carry out the dedicator's general benevolent intent so far as that is feasible and it has expressly undertaken to use any sum awarded to it in the condemnation proceeding for comparable municipal park purposes. See *Rarig, "Dedications by Parol to Charitable Use in Pennsylvania,"* 19 *Temple L. Q.* 1, 12 (1945); *Note, "Grantor's Claim upon Condemnation of Property Used for Charitable Purposes,"* 7 *Duke B. J.* 137 (1939). *Cf. Town of Winchester v. Cox,* 129 *Conn.* 106, 26 *A.* 2d 592 (*Sup. Ct. Err.* 1942). But *cf. Board of Education of Incorporated Village of VanWert v. Inhabitants of Town of VanWert,* 18 *Ohio St.* 221, 227 (*Sup. Ct.* 1868).

The power of the State Highway Commissioner to take a fee simple absolute in lands being condemned for highway purposes is not questioned. *N. J. S. A.* 27:7–22.2. His obligation to pay just compensation therefor is fixed by clear constitutional and statutory provisions. *Const.* 1947, *Art.* I, *par.* 20; *N. J. S. A.* 20:1–9. In general, the proper measure of compensation is said to be the fair market value at the time of the institution of his condemnation proceeding. See *City of Trenton v. Lenzner,* 16 *N. J.* 465, 476 (1954); *New Jersey Highway Authority v. Wood,* 39 *N. J. Super.* 575, 579 (*App. Div.* 1956), *certiorari* denied 21 *N. J.* 551 (1956). *Cf.* 4 *Nichols, Eminent Domain* (*3d ed.* 1951), § 12.2; *Jahr, Eminent Domain,* § 70 (1953). In the instant matter he admittedly took all outstanding interests in the appropriated land, including the secondary title of the borough and the bare legal title of the successors in interest of Joseph

Coyte; nevertheless, he contends that he is under no obliga-
tion to make any substantial payment. In support of his
position he first asserts that since the borough's interest was
solely as representative of the public the State could properly
take it without compensation. See *State Highway Comm. v.
City of Elizabeth,* 102 *N. J. Eq.* 221, 226 (*Ch.* 1928), affirmed
103 *N. J. Eq.* 376 (*E. & A.* 1928) ; 2 *Nichols, supra,* § 5.9;
11 *McQuillin, Municipal Corporations* (*3d ed.* 1950), § 32.81.
It is true that there are judicial opinions which broadly
assert that a Legislature may, by virtue of unlimited control
over its municipal subdivisions (*Jersey City v. Martin,* 126
*N. J. L.* 353, 361 (*E. & A.* 1941)), so appropriate to itself
all municipal property which is held in a governmental
capacity. Thus, in *State Highway Comm. v. City of Eliza-
beth, supra,* the City of Elizabeth interfered with the State's
construction of a highway across lands owned by the city;
the State obtained an injunction from the Court of Chancery
which expressed the view that where property is held by
a municipality in its governmental capacity it "may be
reclaimed by the state at any time without compensation."
It is to be noted, however, that its comment was in nowise
essential to its adjudication, for the State had made an offer
to pay the city for the municipal lands and was presumably
willing to proceed with its condemnation action under the
provisions of the Eminent Domain Act. *Cf. Borough of
Little Ferry v. Bergen County Sewer Authority,* 9 *N. J.* 536
(1952) ; *City of Newark v. New Jersey Turnpike Authority,*
7 *N. J.* 377 (1951) ; *Bergen Co. Sewer Authority v. Borough
of Little Ferry,* 7 *N. J. Super.* 213 (*App. Div.* 1950), appeal
dismissed 5 *N. J.* 548 (1950).

If the sweep of the *Elizabeth* case doctrine were followed
it would enable the State to appropriate, for wholly unrelated
public purposes and without any just compensation, various
municipal properties such as town halls and schoolhouses as
well as lands donated by local residents for municipal parks.
This last result, so startling on its face, was explicitly rejected
by the Supreme Court of Errors of Connecticut in *Town of
Winchester v. Cox, supra.* There, land had been conveyed

to the Town of Winchester "to be forever used as a public park." [129 *Conn.* 106, 26 *A. 2d* 594.] It had been used as such until the State Highway Commissioner took it for the construction of a state highway. No claim was made that the land reverted to the heirs of the grantor, but the town claimed that it was entitled to just compensation. The court held that the state was under obligation to pay the town for the value of the land taken. Chief Justice Maltbie referred to the *Elizabeth* case doctrine but declined to apply it to land given to and accepted by a municipality as a public park, which he said should be treated as a charitable use immune from legislative expropriation unless compensated. See *Smith v. Incorporated Village of Patchogue,* 129 *N. Y. S. 2d* 422 (*Sup. Ct.* 1954), affirmed 285 *App. Div.* 1190, 141 *N. Y. S. 2d* 244 (*App. Div.* 1955). We find it unnecessary to pursue the scope of the *Elizabeth* case doctrine for, even assuming the power of our Legislature to reclaim municipal property without compensation, there is nothing whatever in our statutes which evidences any legislative intent to exercise such far-reaching authority. On the contrary, the pertinent statutory provisions contemplate that although the State Highway Commissioner may condemn municipal as well as private land (*R. S.* 27:7–23), he must proceed under the Eminent Domain Act which has at all times provided for payment of the value of the land taken. *N. J. S. A.* 20:1–9.

In *State Highway Comm. v. Mayor, etc., of Town of Dover,* 109 *N. J. L.* 303 (*E. & A.* 1932), the State Highway Commission instituted proceedings under the Eminent Domain Act for the condemnation of land owned by the Town of Dover. The town received a jury verdict of $7,500 and the Commission appealed, contending that the town held the land in its governmental capacity and was therefore entitled to only nominal damages. The court found that no error injurious to the Commission had resulted from the trial court's action in leaving to the jury the issue of whether the town held the land in its governmental or proprietary capacity; in the course of its opinion it said:

"The Legislature undoubtedly has power to direct the manner in which property may be acquired for public use. *Freeholders of Monmouth County v. Red Bank and Holmdel Turnpike Co.*, 18 *N. J. Eq.* 91. It might have directed the highway commission to acquire lands of a municipality by some method other than provided in the Eminent Domain Act. But it did not do so. It empowered the commission to enter upon and condemn land only in accordance with the terms of that act, which requires compensation to be made according to the just value of the lands taken."

In the present case the State Highway Commissioner appropriately instituted a condemnation proceeding under the Eminent Domain Act. He joined the borough as well as the successors in interest of Joseph Coyte and sought the fixing of the just compensation to be paid for the lands he was taking. His rightful concern was with the total value of the fee absolute in the lands, including the "secondary title" (*Hill v. Borough of Belmar, supra*) which the borough held and the "bare legal title" which the successors in interest of Joseph Coyte held (*Hill v. Borough of Belmar, supra*), and his obligation was to pay just compensation for the undivided fee. See 4 *Nichols, supra,* § 12.36; *Herr v. Board of Education,* 82 *N. J. L.* 610 (*E. & A.* 1912). His obligation was in nowise altered or affected by the institution of his action for declaratory judgment.

█ In the course of or ancillary to the pending condemnation proceeding of the State Highway Commissioner, the respective values of the secondary title taken from the borough and the bare legal title taken from the successors in interest of Joseph Coyte may justly be fixed. See *R. R.* 4:92. *Cf. New Jersey Highway Authority v. J. & F. Holding Co.,* 40 *N. J. Super.* 309 (*App. Div.* 1956); *State, by and through State Highway Comm. v. Burk,* 200 *Or.* 211, 265 *P. 2d* 783, 805 (*Sup. Ct.* 1954). On that issue it would appear that, at the actual moment of the taking, the secondary title rather than the bare legal title was the interest of substantial value, for the former then carried with it the actual right of use and enjoyment whereas the latter then carried with it no right of use and enjoyment but merely the possibility of obtaining it if the dedication were improperly

abandoned. In *First Reformed Dutch Church of Gilboa, N. Y. v. Croswell, supra,* the plaintiff had an estate which was to endure so long as it was used for church purposes. The City of New York took the property in condemnation proceedings and question arose as to who was entitled to the award; in support of its holding for the plaintiff the court had this to say as to respective interests involved:

"The city of New York, in condemnation proceedings, seized the estate of the plaintiff. It also seized the rights of reverter belonging to the heirs at law of the grantors. The seizure was of the entire title, wherever resident, by a single act of appropriation. There was, therefore, no interval of time between the seizure of the plaintiff's estate and the seizure of the rights of the heirs at law during which there could have been a reverter of title to the heirs because of a church disuser of the premises necessarily consequent upon the seizure. At the moment of appropriation there had been no disuser. At that moment the estate then being enjoyed by the plaintiff might have continued forever. At that moment the rights of the heirs were mere possibilities. These rights possessed no value capable of estimate. All that was valuable was the estate of the plaintiff. Therefore the money paid in by the city of New York should be paid to the plaintiff as for the only thing of value taken." [210 *App. Div.* 294, 206 *N. Y. S.* 133]

In *United States v.* 1119.15 *Acres of Land,* 44 *F. Supp.* 449, 450 (*D. C. D. Ill.* 1942) a grantor conveyed property to school authorities with a provision that if it ceased to be used for school purposes it would revert to the grantor and his heirs. The United States Government condemned the property and the court was called upon to determine who was entitled to the condemnation award. Judge Lindley found that the school authorities had a fee simple, defeasible only by abandonment of use of the land for school purposes; that at the moment of the taking there was no imminence or probability of such abondonment; and that the school authorities were entitled to the entire compensation award. In the course of his opinion he cited many of the reported decisions which support the principle that if at the time of taking the "event ripening the right of reverter is not imminent, the owner of the estate in fee simple defeasible is entitled to all the compensation." See *Romero v. Depart-*

*ment of Public Works,* 17 *Cal.* 2d 189, 109 *P.* 2d 662 (*Sup. Ct.* 1941) ; *In re Certain Premises in Block 4987,* 265 *App. Div.* 875, 38 *N. Y. S.* 2d 25 (*App. Div.* 1942), affirmed *In re Park Site Borough of Brooklyn, etc.,* 291 *N. Y.* 501, 50 *N. E.* 2d 645 (*Ct. App.* 1943) ; *Banner Baptist Church v. Watson,* 193 *Tenn.* 290, 246 *S. W.* 2d 17 (*Sup. Ct.* 1952) ; *Hicks v. City of Providence,* 43 *R. I.* 484, 113 *A.* 791 (*Sup. Ct.* 1921). In *State v. Federal Square Corporation, supra,* the grantors conveyed property to be used by the City of Concord for a public library building; the deed provided that if the property was at any time used for any other purpose it would revert to the grantors and their heirs. The State condemned the property for the erection of a State House Annex and the heirs claimed the condemnation award; in rejecting their claim the Supreme Court of New Hampshire held that the city was entitled to the entire award, which was to be applied by it *cy pres* for library purposes.

In *Romero v. Department of Public Works, supra* [17 *Cal.* 2d 189, 109 *P.* 2d 665], land had been conveyed with a condition that if the grantee failed to use it for railroad purposes it would revert to the grantor's heirs. The State condemned a right of way for the construction of a highway over the land; in discussing claims advanced by the heirs the court said:

"The authorities generally are to the effect that the owner of the possibility of a reverter prior to a breach of the condition is not entitled to compensation when the property is taken under the law of eminent domain. Such cases hold that the possibility of voluntary abandonment by non-user is so remote and improbable that it has no substantial value to be estimated in a condemnation proceeding. They recognize, however, that the owner of the fee or the reversionary interest should have a separate valuation of his interest where the land taken has some special value to him, as where the underlying lands are shown to be mineral bearing or otherwise of value separately from the use of the surface of the land; but that otherwise the law will not take notice of the separate value of the fee and of the user where there is no substantial difference in their values, and if, in such case, at the time fixed for the valuation the reversion has not occurred, the reversionary interest is said not to have any compensable value in a condemnation proceeding. *Southern Pac.*

R. Co. v. San Francisco Sav. Union, 146 Cal. 290, 79 P. 961,
70 L. R. A. 221, 106 Am. St. Rep. 36, 2 Ann. Cas. 962; City of
San Gabriel v. Pacific El. Ry. Co., 129 Cal. App. 460, 18 P. 2d 996;
Lutes v. Louisville & Nashville Railroad Co., 158 Ky. 259, 164 S. W.
792; Nichols, Eminent Domain, 2d ed., vol. 1, p. 243; see also
Lyford v. City of Laconia, 75 N. H. 220, 72 A. 1085, 22 L. R. A.,
N. S., 1062, 139 Am. St. Rep. 680."

We are in accord with the individual appellants' position
that the dedicated use of the area has not been continued by
the State; it seems evident that the present use of the area
as part of a limited access high speed highway differs
significantly from its former use as a local park. See Seward
v. City of Orange, 59 N. J. L. 331, 334 (Sup. Ct. 1896);
Priory v. Borough of Manasquan, 39 N. J. Super. 147, 161
(App. Div. 1956). And we recognize, as they stress, that
the judicial decisions have dealt generally with actual trans-
fers by deed of defeasible estates (Restatement, Property
§ 14 et seq.) rather than with dedication by map which
in our State involves the creation of public rights along
with the retention of bare legal title. But we believe that
the ultimate determination may not justly turn on meta-
physical distinctions but must rest upon substantial realities.[1]
Admittedly, Joseph Coyte dedicated the area as a public
place for recreation, relaxation and rest and the dedication
was accepted by the borough. There never was any formal
deed of grant or any formally designated grantee but there
was a clear attachment of the public right to the use and
enjoyment of the area. And there was an equally clear

---

[1] See Board of Education, City of Wapakoneta v. Unknown Heirs,
57 Ohio Ops. 291, 128 N. E. 2d 534 (C. P. 1954), affirmed 99 Ohio
App. 463, 134 N. E. 2d 872 (Ct. App. 1955), where Judge Dull
said (128 N. E. 2d, at page 545):

"A study of these and other cases reveals an almost indiscriminate
use of such legal labels, brands or tags as 'fee subject to a use,'
'fee held in trust,' 'determinable fee,' 'a base or qualified fee' and
others. And although the legal profession has made almost a
fetish of these and similar words, they hold no magic in themselves.
Rather, they lead to meaningless by-paths and lanes of confusion
with dead ends instead of acting as guide posts to understandable
and equitable solutions of everyday problems."

attachment of the borough's duty to protect the public right, and the legal standing of the borough, as representative of the public, to institute and defend actions for that purpose. See *Trustees of M. E. Church, Hoboken, v. Mayor, etc., of City of Hoboken, supra,* 33 *N. J. L.,* at *page* 19; *Paterson and Passaic H. R. Co. v. Mayor, etc., of City of Paterson,* 24 *N. J. Eq.* 158, 165 (*Ch.* 1873); *Trustees of the Village of Watertown v. Cowen,* 4 *Paige* 510, 3 *N. Y. Ch. Rep.* 536 (*Ch.* 1834); *Town of Milford v. Commissioner of Motor Vehicles,* 139 *Conn.* 677, 96 *A. 2d* 806 (*Sup. Ct. Err.* 1953); 38 *Am. Jur., Municipal Corporations* § 720, *p.* 424. The precise designation of the borough's interest is not vital and we may, for present purposes, accept its description in *Hill v. Borough of Belmar, supra,* as a "secondary title" which it held "in trust for the purposes of the dedication." The borough has not sought to terminate the trust or abandon the dedicated use (*Priory v. Borough of Manasquan, supra,* 39 *N. J. Super.,* at *page* 160) but has necessarily bowed to the intervention of a paramount sovereign authority. Under the circumstances the principles expressed in the cases cited earlier in this opinion may fairly be invoked. When the State Highway Commissioner condemned, the possibility that there would be a reverter entitling the individual appellants to actual use and enjoyment had no apparent worth, nor did it then accrue (*First Reformed Dutch Church of Gilboa, N. Y. v. Croswell, supra*), and while there was also a taking of the bare legal title, that interest would seem, in the absence of a showing of special factors, to have little transferable value for purposes of condemnation. See 18 *Am. Jur., Eminent Domain* § 248, *p.* 886. *Cf. In re Braddock Avenue, City of New York,* 278 *N. Y.* 163, 15 *N. E. 2d* 563 (*Ct. App.* 1938); *New Jersey Highway Authority v. Johnson,* 35 *N. J. Super.* 203, 212 (*App. Div.* 1955).

In *Town of Winchester v. Cox, supra,* the town was awarded compensation for land which it had held as a public park and which was taken for the construction of a state highway; the court determined that the proper measure of compensation was the fair value of the land free from

the restriction. When considered in the light of the fact that the award was directed to be used "only for proper park purposes" [129 *Conn.* 106, 26 *A.* 2*d* 597] the court's result seems to be eminently sound; it represented a fair *cy pres* application and was well designed to enable continued fulfillment of the general charitable intent of the grantor. It is true that in the *Winchester* case there was a deed rather than a dedication by map, and there are judicial opinions in other states which have declined to apply *cy pres* in the latter situation. But those opinions contain no persuasive reasons for refusing to invoke the doctrine, and we fail to see why there should be any reluctance in seeking to effectuate the general benevolent purpose which has been sufficiently evidenced by the dedicator. Our courts have sympathetically applied *cy pres* in dealing with charitable trusts (*Wilber v. Owens*, 2 *N. J.* 167 (1949)) and as has been suggested elsewhere, there is very close "kinship between trusts and dedications." See *Com. ex rel. v. First Nat. Bank of Danville*, 46 *Pa. Dist. & Co. R.* 619, 623 (1943). Indeed, our own dedication cases have specifically talked in terms of the title being held "in trust" for the purpose of the dedication. *Hill v. Borough of Belmar, supra*. In the instant matter it is impossible to continue the public square dedicated by Joseph Coyte; but it is not impossible to approximate fulfillment of his general benevolent intent and the borough has undertaken and should be directed to apply any sum awarded to it in the condemnation proceeding to that end.

The judgment entered below is modified, with direction that the condemnation action instituted by the State Highway Commissioner proceed in accordance with the principles embodied in this opinion.

*For modification*—Chief Justice VANDERBILT, and Justices BURLING, JACOBS and WEINTRAUB—4.

*For affirmance*—Justices HEHER and OLIPHANT—2.