BOARD OF EDUCATION, CITY OF WAPAKONETA, APPELLEE, *v.*
THE UNKNOWN HEIRS OF AUGHINBAUGH ET AL.; ST. PAUL'S
EVANGELICAL AND REFORMED CHURCH OF WAPAKONETA,
APPELLANT.

(No. 177—Decided July 1, 1955.)

*Mr. Edward Stroebel,* for appellee.

*Messrs. McKeever & Monahan,* for appellant.

QUATMAN, P. J. This is an appeal on questions of law from the Common Pleas Court of Auglaize County, in an action to quiet title. The matter was heard before this court on March 2, 1955, and again on June 8, 1955.

The plaintiff seeks to have its alleged title to four lots and an alley located in the city of Wapakoneta, Ohio, quieted as against the named defendants. There is no dispute as to two of the lots in question, namely, lots Nos. 57 and 58, or the alley. The lower court found that none of the defendants had any interest in those two lots or the alley, and its judgment in that respect is affirmed.

The real controversy concerns the title to lots Nos. 59 and 60, which adjoin the aforesaid premises. These lots were originally owned by Peter Aughinbaugh, J. E. Wilds and Joseph Barnett, whose unknown heirs are made parties to this action.

In 1833, these three men signed and recorded the original plat of the city of Wapakoneta, Ohio, whereon the following appears:

"The proprietors donate all streets and alleys for public

highways and lots 59 and 60 for a meeting house and school house."

The evidence discloses that thereafter a school house was constructed in part on lot No. 59, and that a church was constructed on lot No. 60. In order that the two groups might establish a line of demarcation between themselves, quitclaim deeds were exchanged between the school board and the trustees of the church. The church later divided into two bodies, one of which is a defendant, an appellant herein. The church building was vacated in approximately 1874, and at that same time a new school was constructed. The church building was moved to a new site and converted into a dwelling house. Thereafter, and continuously until 1950, the site was used for school purposes, lot No. 59 containing a part of the building, and the balance, along with lot No. 60, being used as a school play yard. The buildings have been removed, and the land now stands vacant.

Appellant assigns the following errors:

1. The court erred in not sustaining the motion to dismiss said action.

2. The court erred in holding that said real estate, under the dedication, should revert to the original dedicator.

3. The right of the grantor to repudiate the recitation of its quitclaim deed.

4. Did the board of education occupy said lot as a licensee?

5. The court erred in making Maurice Howe a party defendant.

6. The court erred in assessing costs against the church, defendant-appellant.

While the parties to the original plat chose to use the word, "donate," rather than the word, "dedicate," as is customary, there can be no question as to their intention to effect a dedication, and that must be the legal effect given to the words used. There is some question as to whether the dedication was statutory or one at common law.

There is nothing contained in the words of the plat (one of plaintiff's exhibits) which would indicate that by the term, "school house and meeting house," the dedicators intended that two separate buildings were to be constructed. It is

common knowledge, and the early history of the city of Wapakoneta shows, as contained in the exhibits, that school houses were also employed as the town meeting house. The school house constructed on the premises was frequently used by the public for meetings.

It is our conclusion that it was not the intention of the dedicators that two separate buildings be constructed, but that the two purposes are merged as one.

An examination of plaintiff's exhibit, which is the original town plat of the city of Wapakoneta, discloses that it was signed by the dedicators in January 1833, acknowledged before a notary public and justice of the peace, and recorded that same year.

The statute in effect with regard to the dedication of lands in the year 1833 may be found in 22 Ohio Laws, 301. The method was extremely simplified and required no acceptance on the part of the public or a governmental body. The first part of the section prescribes that an accurate map or plat be recorded; and the second part prescribes that the map or plat so made, and acknowledged before certain officers, and recorded, shall be deemed a sufficient conveyance to vest the fee in the county in which such town lies, in trust for the uses of the public or other intended purpose, and no other.

The plat in the instant case meets the requirements of the statute, and is, therefore, statutorily dedicated property. See *Lessee of Incorporated Village of Fulton* v. *Mehrenfeld,* 8 Ohio St., 440.

It is contended by the defendant St. Paul's Evangelical and Reformed Church of Wapakoneta that it has a claim to lot No. 60, and possibly to lot No. 59, by reason of its predecessor, St. Paul's Lutheran German Church, being the body that built the church on lot No. 60, and, also, by reason of the exchange of deeds between that body and the plaintiff board of education.

It is the opinion of this court that this defendant can assert no title to either of the lots greater than that of the public in general, as its interest must derive from the dedication and the laws affecting such dedication. Assume that it could assert a proprietary or paramount interest by reason of its predecessor's actions. That interest was abandoned over 75

years ago and hardly could be revived at this late date. The exchange of quitclaim deeds between the board of education and the church body was obviously done in order to define the then existing several interests in the two lots.

The defendant Maurice M. Howe claims an interest in the premises in question by reason of a purchase contract he entered into with the plaintiff, upon which contract he has made a substantial down payment. He is a proper party to a determination of the issues presented by the petition of plaintiff, and it was not error to join him as a defendant.

The case of *Babin* v. *City of Ashland,* 160 Ohio St., 328, 116 N. E. (2d), 580, marks a decided change in the law as it heretofore existed regarding reversionary interest in land, the fee of which was dedicated by plat for public purposes. Such land had always been held to revert to the original dedicators when the purpose or purposes for which it was originally dedicated were abandoned, without regard to whether the dedication contained a reversionary clause.

A statutory dedication was, prior to the decision in *Babin* v. *City of Ashland, supra,* distinguished from a dedication made by deed of grant, in that the latter was held not to revert unless the deed specifically contained a reversionary clause.

The Supreme Court has now determined that a statutory dedication and one made by deed of grant are similar in nature as to reversion, where the fee in the statutory dedication is found to have been conveyed for a valuable consideration.

In the *Babin case, supra,* it was found that, where the dedicators were also the owners of the property surrounding the land they had dedicated for park purposes, they had received a consideration for the dedication by reason of the increased value the park brought to the surrounding land. That case specifically overruled so much of the case of *Board of Education of Incorporated Village of Van Wert* v. *Inhabitants of Van Wert,* 18 Ohio St., 221, 98 Am. Dec., 114, as conflicts with the above finding.

In view of the foregoing, we find in the instant case no reversionary clause contained within the dedication; and, we further find that the dedication was made for a valuable consideration, so far as the dedicated purpose, as found in the *Babin*

*case, supra,* would increase the value of the surrounding lands owned by the dedicators. It therefore follows that the title to the land in question vested in fee simple in the county of Auglaize, there then being no incorporated city to receive it. See, also, *Miller* v. *Village of Brookville,* 152 Ohio St., 217, 89 N. E. (2d), 85; *In the Matter of Copps Chapel Methodist Episcopal Church,* 120 Ohio St., 309, 166 N. E., 218.

The title so vested in the county of Auglaize was thereafter transferred to the city of Wapakoneta, upon its having received its charter as an incorporated city on March 2, 1849.

The opinion in the *Babin case, supra,* on page 336, reads as follows:

"In our opinion, therefore, the General Assembly may provide for the transfer to and vesting in a municipal corporation of the fee to lands in such municipal corporation which were theretofore vested by prior laws and by dedications thereunder in the county in which such municipal corporation was located."

See, also, Section 6 of the Act of 1831 (29 Ohio Laws, 350), providing for the transfer to an incorporated town of the legal title to public grounds which formerly had been vested in the county for the benefit of such town.

By the Act of May 1, 1873 (70 Ohio Laws, 195, 205, Chapter VI, Section 39):

"All property real or personal, which has heretofore vested in and is now held by any board of education, or town or city council, for the use of public or common schools in any district, is hereby vested in the board of education provided for in this act, having under this act jurisdiction and control of the schools in such district."

Having determined that the fee simple title to the real property in question is vested in the Board of Education of the City of Wapakoneta, we come now to the question of whether its title is such as will authorize a sale of the property.

In reviewing the cases involving the manner in which governmental bodies hold title to so-called "public grounds," we find a distinguishment being drawn between those lands held merely for the use of the public and those grounds which in fact are owned by the public. Where the land is owned by the

public, it follows that the public may sell the same. However, some question as to alienability arises where the public has a use only. In the latter instance, it is arguable that a sale of the land by the governmental body will involve the destruction and extinguishment of the use and public rights of the inhabitants in the land. This point is also discussed at length in the *Babin case, supra.*

The manner in which a governmental body shall hold title to lands dedicated by town plat for public use was first set forth in the Act of February 14, 1805, entitled "An act to provide for the recording of town plats." 22 Ohio Laws, 301. See, also, 2 Laws of the Territory of the United States Northwest of the River Ohio, 41, 1801.

Section 2 of that act provides that when a town plat is acknowledged and recorded as therein provided, it "shall be deemed a sufficient conveyance to vest the fee of such parcels of lands as are therein expressed, named or intended to be for public uses in the county in which such town lies, in trust to and for the uses and purposes therein named, expressed or intended, and for no other use or purpose whatever." This section remains relatively unchanged so far as the trust provision is concerned. See Section 711.07, Revised Code (Section 3585, General Code).

In view of the express wording of the law, and, further, in view of the case law on this question, we cannot escape the conclusion that the board of education in the instant case holds the fee simple title to the property in question, in trust, however, for the use of the public. *Board of Education of Van Wert* v. *Inhabitants, supra.*

While *Babin* v. *Ashland, supra,* is authority for the conclusion that the property in the instant case does not revert to the original dedicators, their heirs or assigns, we are unable to apply the reasoning of that case, in concluding that the city of Ashland had authority to sell the land there in question, to the facts of this case, so as to conclude that a board of education has the same power. The Supreme Court was careful to point this out, when it stated in the opinion, on page 351, that:

"The sale of that land, provided for in the ordinance authorizing its sale, will, if carried out in accordance with the

terms of that ordinance, necessarily involve a taking of such public rights. If the city did not have 'authority to exercise all powers of local self-government,' there might be some question as to the validity of an ordinance having that effect, as there was with regard to the legislative action of the school board in the *Van Wert case*.''

We acknowledge that the court in reaching its conclusion lays some stress on the power of eminent domain possessed by cities. However, it is apparent that the reasoning primarily relied on is Article XVIII of the Constitution, granting powers of local self-government to municipalities. See paragraph 6 of the syllabus of the *Babin case*.

While it is conceded that school boards also possess powers of eminent domain (see Section 3313.19, Revised Code), it likewise can be conceded that they do not possess powers of local self-government equal to that possessed by municipalities. It would, therefore, place an additional strain on the reasoning of that case to extend its rule to empower a sale in the instant case.

While the record in this case does not disclose any formal resolution to the effect that the property in question is no longer required for school purposes, it is obvious, nevertheless, that this was the board's conclusion, as shown by the very fact that it has resolved to sell the premises.

There is no assertion in the case, nor is there evidence to indicate, that the premises in question are presently, or will be in the future, required for school purposes. The evidence discloses that the premises have come into disuse by reason of the construction of a larger and more modern school at a more practical location. There is, then, no evidence that the board of education has abused its discretion in determining to sell this land.

Normally, no question would be raised with regard to the authority of a board of education to sell school property, as it has been given specific authority to do so by statute. See Section 3313.41, Revised Code (Section 4834-13, General Code). However, this statute cannot be construed to authorize a sale of land, the fee simple title to which is held in trust for a public purpose, as in the instant case.

Unless the terms of a trust grant the trustee certain latitude, he is rigidly required to conserve and preserve the corpus of the trust. This proposition is so elementary as to require no authority for its support. However, under certain circumstances, a court of equity will permit a deviation from the terms of the trust where it can be shown that a change of circumstances has developed, which was not anticipated by the settlor, and which has rendered the operation of the trust impossible, or has substantially impaired the accomplishment of the purpose of the trust. See 1 Restatement of the Law, Trusts, 407, 415, Sections 165, 167.

The court refused to permit a deviation in the case of *Board of Education of Incorporated Village of Van Wert* v. *Inhabitants of Van Wert, supra,* the factual situation there under consideration being similar to the instant case.

However, under authority of *Babin* v. *City of Ashland, supra,* the difficulty that confronted the court in its refusal to allow a deviation from the trust is now no longer present.

In the *Van Wert case, supra,* the court stated on page 226:

"Is it competent for a court of equity, without the consent of the dedicators, to extinguish forever this right of reversion, by ordering a sale of the property, and assuming to execute the trust *cy-pres,* by transferring it to the proceeds of the sale? We think judicial power cannot legitimately be so far extended.

"Even if this could be done, the dedicators should certainly be made parties to the proceeding; otherwise their rights would be unaffected by any order of the court in the premises."

It is apparent from this that the court's only concern in refusing to modify the trust was that of the reversionary interest of the dedicators.

Having determined that the dedicators have no reversionary rights in the premises in the instant case, the impediment is thus removed. It would be an idle and wasteful thing to permit this land to lie dormant and unproductive, serving no useful purpose to the community in general or the school board in particular. Lands dedicated on town plats for public use are so dedicated in order that the community might grow and progress in keeping with a scheme or plan, and in order to make the community attractive to prospective settlers. It would be

unreasonable to expect that the expansion and population growth of a community over a period of 120 years from the recording of its original town plat would not require some deviation from the plan or scheme incorporated in that plat. To hold otherwise would require the school board in the instant case to perpetuate a dry trust that serves neither the intention of the settlors, nor is beneficial to the cestui que trust; and in addition, it places an undue burden on the trustees.

We find no merit to the argument that the school board can assert title by application of the doctrine of adverse possession. They and their predecessors, *i. e.*, the city of Wapakoneta and the county of Auglaize, are, and have been since the dedication in 1833, the only persons against whom title could be asserted. It is self-evident that they could not hold adversely against themselves.

It is, therefore, the opinion of this court that the plaintiff Board of Education of City of Wapakoneta holds the fee simple title absolute to lots Nos. 57 and 58, and the alley, as described in their petition; and that the board of education holds title to lots Nos. 59 and 60 in fee simple in trust for school purposes and as a town meeting house. It is our opinion further that the board of education should be authorized to sell lots Nos. 59 and 60, and apply the proceeds to the construction and maintenance of school buildings within its jurisdiction.

While the reasoning contained in the opinion of the lower court differs in certain respects from that of this court, the conclusion is the same, and in that respect we find no error; and the judgment of the lower court is affirmed.

*Judgment affirmed.*

MIDDLETON and YOUNGER, JJ., concur.