WINIFRED C. OLDFIELD, *ET VIR.*, PLAINTIFFS-APPEL-
LANTS, v. STOECO HOMES, INC., *ET AL.*, DEFENDANTS-
RESPONDENTS.

Argued January 22, 1958—Decided March 3, 1958.

248

*Mr. W. Louis Bossle* argued the cause for the plaintiffs-appellants.

*Mr. Robert K. Bell* argued the cause for the defendant-respondent Stoeco Homes, Inc.

*Mr. George H. Bohlinger, Jr.,* argued the cause for the defendant-respondent City of Ocean City (*Mr. John E. Boswell,* attorney).

*Mr. Albert B. Melnik* argued the cause for the defendant-respondent Seaboard Fidelity Company (*Messrs. Hermann, Melnik and Lowengrub,* attorneys).

The opinion of the court was delivered by

BURLING, J.   This is a proceeding in lieu of prerogative writ.   Suit was instituted by plaintiffs, residents and taxpayers of the City of Ocean City, with the object of having several resolutions of the City of Ocean City extending the time for performance of certain conditions in a deed declared invalid, and for the further relief of having lands owned by the defendants forfeited and returned to the city.   The parties defendants are Stoeco Homes, Inc., the purchaser from Ocean City, Workshop, Inc., a subsequent grantee of a portion of the land from Stoeco, and Seaboard Fidelity Company, Workshop's mortgagee, and the City of Ocean City.

From an adverse determination in the Superior Court, Law Division, plaintiffs prosecuted an appeal.   Prior to hearing in the Appellate Division, we certified the cause on our own motion.

The facts are not in dispute and have been stipulated by the parties.   This stipulation, together with the exhibits and the additional testimony of three witnesses, the mayor of Ocean City, a city commissioner and a corporate officer (secretary) and stockholder of Stoeco comprise the evidence in the case.

In 1951 Ocean City held title to a large number of lots of undeveloped land in a low lying area of the city. The locale of the lots is roughly divisible into two large segments, with Bay Avenue forming a dividing line between east and west. The western segment, in which the city owned several hundred lots, extends from Bay Avenue on the east to the bay thorofare on the west and from 18th Street on the north to 24th Street on the south. The eastern segment, in which the city owned some 653 lots, is bounded by Bay Avenue on the west, Haven Avenue on the east, 20th Street on the north and 34th Street on the south. It is the lots in the eastern segment which are the subject matter of this litigation.

The topography of the entire area is an essential factor in this case. What little there is in the record concerning the western segment indicates that, although it was below grade and required fill, it was generally higher and necessitated less fill in order to raise the grade to the existent levels in the remainder of the city than the eastern segment. It was also situated nearer the bay and conceded to be commercially more valuable.

The eastern tract consisted largely of mosquito breeding swamp and meadow lands with salt ponds interspersed and required extensive filling and grading before the land could be utilized for residential or other productive uses.

Stoeco was desirous of acquiring the lots owned by the city in the western segment, and as part of a general plan of redevelopment it conceived of the idea of acquiring the lots owned by the city in the eastern segment also. Ocean City, recognizing that an extensive redevelopment of these swampy areas would benefit the community, indicated its willingness to sell the lots, with the exception of 226 lots in the eastern tract which it desired to retain.

After receiving minimum bids for the two groups of lots, Ocean City advertised both tracts of land for public sale on February 14, 1951, setting forth in the advertisement various terms and conditions with which the vendee was to comply. At the sale Stoeco was the only and therefore the

highest bidder for both the eastern and western groups of
lots, bidding $10,525 for the former and $100,000 for the
latter. The sales were duly confirmed by two resolutions
of the municipality dated February 16, 1951, and final
settlement was made on both sales on June 29, 1951.
Throughout the sales were treated as separate transactions
and no question is raised in this case concerning Stoeco's
performance of the conditions imposed by the deeds to the
lots on the western side.

While the deed from Ocean City to Stoeco contained
various conditions and restrictions, the core provisions around
which this dispute centers are:

"(a) Within one (1) year from the date of this Deed, the party
of the second part shall fill all of the following listed lots of land
now owned by the party of the first part and which are not being
conveyed.
(Here follows a list of lots by lot number and block number.)

\*       \*       \*       \*       \*       \*       \*       \*

(b) Within one (1) year following the date of this Deed, the
party of the second part shall fill all of the lots of land sold to
said party of the second part as a result of this sale."

"(d) All such lands shall be filled to at least the now established
and existing grades of the City of Ocean City, New Jersey for the
areas and lots to be filled."

"The City of Ocean City reserves the right to change or modify
any restriction, condition or other requirements hereby imposed in
a manner agreeable to or as permitted by law.

A failure to comply with the covenants and conditions of para-
graphs (a), (b) and (d) hereof will automatically cause title to
all lands to revert to the City of Ocean City; and a failure of
any other restrictions and covenants may cause title to revert to
the City as to any particular land, lot or lots involved in any
violation."

Thus, Stoeco was required to fill and grade not only the
lots sold to them by the city, but also the lots retained by
the city.

Some of the blocks did not contain all the lots making
up the block, so that in order to complete its holdings
Stoeco purchased between February and November of 1951,
137 lots from various individuals for a total price of $20,020.
Shortly after settlement Stoeco entered into a contract with

the Hill Dredging Company to hydraulically fill the two areas purchased by Stoeco. With materials dredged from two new lagoons on the west side, the Dredging Company between September and December of 1951 filled hydraulically a large portion of the west side and a small portion of the east side. At this stage serious difficulties were encountered by Stoeco in the performance of its undertakings. Stoeco's original scheme contemplated that five lagoons located on the west side should be dredged and the materials removed would be employed to fill the eastern side of Bay Avenue. It quickly became apparent however that the material dredged from the lagoons was not of sufficient quality to be used as fill; it contained too high a quantity of mud and silt. In fact, Stoeco was compelled to acquire an island from a private source to use as a spill area in order to dispose of the substandard substances dredged from the lagoons. These unfavorable dredging conditions, not originally contemplated, created serious engineering and financial problems for Stoeco.

By June 29, 1952, one year after obtaining the deed, Stoeco had still not completed the substantial portion of filling and grading, nor had it done so by February of 1953. Ocean City, more interested in redevelopment than declaring a default, passed a resolution on February 20, 1953 to change and modify the terms and conditions of the sale of land. The city relied upon *N. J. S. A.* 40:60–51.2 and *N. J. S. A.* 40:60–51.5 as the wellspring of its authority, following the procedure as to publication of notice, public hearing and passage outlined. Plaintiffs were not present at the commissioners' meeting to object to the passage of the resolution.

The general import of the resolution was that Stoeco was to be given until December 31, 1954 to complete the filling and grading of all lots purchased between Bay and Haven Avenues and 20th and 24th Streets. The resolution further provided that Stoeco was to fill to city grade all the lots in the area retained by the city, and that Stoeco was to execute and deliver a deed to be held in escrow on the conditions set forth in the resolution.

The deed concluded:

"If the purchaser is not in default on December 31st, 1954, the City may consider, by any method then permitted by law, the terms and conditions by which the purchaser may be permitted to retain title to the lots between 24th and 34th Street and the plan of filling and development of the lots therein;"

Thereafter on March 6, 1953 Stoeco conveyed the lots in the area between Bay and Haven Avenues and 20th and 22nd Streets to Workshop, Inc. Workshop trucked in fill for the area at a cost of approximately $58,000. Thereafter Workshop, under an agreement with Stoeco, erected 23 homes on the tract it had acquired. All these homes were sold, the sales prices totalling $262,100. The stipulation of facts contains the following recital:

"None of the individuals who purchased homes from Workshop, Inc. have been made parties to this litigation and it is agreed that any judgment of the court should not affect the rights of any of these individuals."

Workshop, in order to finance the construction, mortgaged a portion of the tract it had received from Stoeco to defendant Seaboard Fidelity Company, for $82,000.

Ocean City, by December 31, 1954, accepted the filling of the area between Bay and Haven Avenues and 20th and 24th Streets as substantially completed. On December 30, 1954, Ocean City passed the second of the disputed resolutions, again following the procedures as to publication of notice, public hearing and passage provided by *N. J. S. A.* 40:60–51.2 and *N. J. S. A.* 40:60–51.5. This resolution extended the time for performance of the original conditions of the sale as to land between 24th and 30th Streets until January 1, 1958, and as to the lots between 30th and 34th Streets until January 1, 1960. The resolution further provided for destruction of the deed executed by Stoeco under the 1953 resolution and required that Stoeco execute and deliver two new deeds to be held in escrow by the city clerk on the terms and conditions set forth.

Plaintiffs were present at the commissioners' meeting of December 30, 1954, when the second resolution was adopted, and voiced their objections. Some time later, on October 3, 1955, plaintiffs instituted the instant in lieu proceeding attacking the two resolutions and seeking a forfeiture of all the lands to Ocean City for failure to comply with the original one year time limitation.

The legal issues projected by the pleadings and pre-trial order were: (1) whether the deed from Ocean City to Stoeco created an estate in fee simple subject to a condition subsequent or an estate subject to a limitation (a fee simple determinable, *Restatement, Property,* § 44 (1936)); (2) whether the resolutions extending the time for performance were without consideration and void because in violation of *N. J. Const.* 1947, *Art.* VIII. *Sec.* III, *par.* 3, which provides:

"No donation of land or appropriation of money shall be made by the State or any county or municipal corporation to or for the use of any society, association or corporation whatever."

(3) whether the resolutions were *ultra vires;* (4) whether the proceeding was barred because of the application of doctrines of waiver or estoppel or because not instituted within the 30-day limitation contained in *R. R.* 4:88–15(a), as that rule read at the time of commencement of this action.

The court below held that the nature of the defeasible estate created was one in fee simple, subject to a condition subsequent; that the resolutions were neither unconstitutional nor *ultra vires,* and that the proceeding was barred on all the grounds advanced. The issues raised below are again urged on appeal.

First, we consider the issue relating to the nature of the estate created. It is said that a fee simple determinable differs from a fee simple subject to a condition subsequent in that, in the former, upon the happening of the stated event the estate *"ipso facto"* or *"automatically"* reverts to the grantor or his heirs, while in the latter the grantor must take some affirmative action to divest the

grantee of his estate. *Board of Chosen Freeholders of the County of Cumberland v. Buck,* 79 *N. J. Eq.* 472 (*Ch.* 1912); *Carpender v. City of New Brunswick,* 135 *N. J. Eq.* 397 (*Ch.* 1944); *Restatement, Property,* §§ 44, 45 (1936). The interest remaining in the grantee in a fee simple determinable has been denominated a possibility of reverter, *Restatement, Property,* §§ 44, 154, while the interest remaining in the grantee of a fee simple subject to a condition subsequent, *i. e.,* the right to re-enter upon the happening of prescribed contingency, has been denominated a power of termination. *Restatement, Property,* §§ 45, 155.

It is further alleged that a fee simple determinable estate is more onerous than an estate in fee simple subject to condition subsequent in that in the defenses of waiver and estoppel which are applicable to the latter are unavailing in the former. But *cf. Dunham, "Possibility of Reverter and Powers of Termination—Fraternal or Identical Twins?,"* 20 *U. Chicago L. Rev.* 215 (1952); *McDougal and Haber, Property, Wealth, Land,* 286 (1948). We can assume, without deciding the point, that such a distinction exists between the two estates, for the reason that, as will be hereafter developed, the estate created in the instant case was one subject to a condition subsequent.

The reverter clause in the deed bears repetition at this point:

"A failure to comply with the covenants and conditions of paragraphs (a), (b) and (d) hereof will automatically cause title to all lands to revert to the City of Ocean City; and a failure of any other restrictions and covenants may cause title to revert to the City as to any particular land, lot or lots involved in any violation."

Plaintiffs assert that the language of automatic reverter in the deed indicates beyond cavil that the estate created was a fee simple determinable and that therefore the municipality's effort to waive the breach of performance was ineffectual.

While language is the primary guide for the ascertainment of whether a given deed attempts to condition or

limit an estate, still it is the instrument as a whole, and not a particular phrase aborted from the context which provides the basis for the attainment of our ultimate task which is to effectuate the intention of the parties. The particular words, upon which are predicated the right, or lack of it, to a forfeiture are often emphasized. Thus, it has been said that such words as "so long as," "until" or "during," followed by words of reverter, are appropriate to create a fee simple determinable, whereas such words as "upon condition that" or "provided that" are usual indicators of an estate upon condition subsequent. *Board of Chosen Freeholders of the County of Cumberland v. Buck, supra; Carpender v. City of New Brunswick, supra; Restatement, Property,* § 44, *comment* (*l*) ; § 45, *comment* (*j*) (1936). But that particular forms of expression standing alone and without resort to the purpose of the instrument in question are not determinative is at once apparent to a discerning surveyor of the case authorities. A comparison of the language utilized with the constructional result reached in the New Jersey cases demonstrates this proposition. In *Cornelius v. Ivins*, 26 *N. J. L.* 376 (*Sup. Ct.* 1857), the following language was construed as a condition subsequent:

"\* \* \* the said party of the second part, their heirs or assigns shall at any time hereafter wholly cease to use the said rail or tramway for the purpose of transportation or conveyance, or suffer the same to go entirely out of repair, and to become unfit for use, or cease to use the same for transportation or conveyance for the space of five whole years, that then, or in either of the said cases, or on failure of any of the said conditions, or either of them, this deed and the estate hereby granted shall cease, determine, and become utterly void, anything herein contained to the contrary notwithstanding ; and the said premises shall revert to the said party of the first part, their heirs and assigns, and re-vest in them, in as full and ample manner as if this deed had not been made ; and they shall be entitled to demand of the said party of the second part a re-conveyance thereof, if they shall desire the same ;" (at *pages* 380–381)

While in *Pamrapau Corporation v. City of Bayonne*, 126 *N. J. Eq.* 479 (*Ch.* 1939), motion denied 126 *N. J. Eq.* 478 (*Ch.* 1939), affirmed 127 *N. J. Eq.* 340 (*E. & A.* 1940),

motions denied 129 *N. J. Eq.* 3 (*Ch.* 1941), affirmed 129 *N. J. Eq.* 586 (*E. & A.* 1941) and 130 *N. J. Eq.* 240 (*E. & A.* 1941) the following language was construed as a special limitation:

"\* \* \* and if at any time hereafter any conveyance is made to any person or corporation of the premises aforesaid now owned by the city \* \* \* then this grant shall end and determine and the said lands under water, and all the rights and privileges shall revert to and belong to the state, free and clear of any claim or claims under or by virtue of this grant." (126 *N. J. Eq.*, at *page* 481)

See also *Carpender v. City of New Brunswick, supra.*

The ancient land law imputed a thaumaturgic quality to language. See *Reichard v. Chicago, B. & Q. R. Co.,* 231 *Iowa* 563, 1 *N. W. 2d* 721, at *page* 727 (*Sup. Ct.* 1942); *Board of Education, City of Wapakoneta v. Unknown Heirs, Ohio Com. Pl.,* 128 *N. E. 2d* 534 (*C. P.* 1954), affirmed 99 *Ohio App.* 463, 134 *N. E. 2d* 872, 877 (*Ct. App.* 1955). If the judicial eye in scanning the instrument chanced upon a pet phrase the inquiry was ended without resorting to the arduous effort of reconciling evident inconsistencies therein. The universal touchstone today is the intention of the parties to the instrument creating the interest in land. ██ If the four corners of the deed provide a coherent expression of the parties' intent, we need search no further, but if an ambiguity or a reasonable doubt appears from a perusal of the particular symbols of expression our horizons must be broadened to encompass the circumstances surrounding the transaction. *Sergi v. Carew,* 18 *N. J. Super.* 307 (*Ch. Div.* 1952); *Riverton Country Club v. Thomas,* 141 *N. J. Eq.* 435 (*Ch.* 1948), affirmed 1 *N. J.* 508 (1948). *Cf. City of Passaic v. State,* 33 *N. J. Super.* 37 (*App. Div.* 1954). To the foregoing must be added certain constructional biases developed in a hierarchical fashion and predicated upon the proposition that the law abhors a forfeiture. Thus, if the choice is between a condition subsequent and a restrictive covenant, the former is preferred. *Woodruff v. Woodruff,* 44 *N. J. Eq.* 349 (*Ch.* 1888); 2 *Powell, Real*

*Property*, § 188. And where the choice is between an estate in fee simple determinable and an estate on condition subsequent, the latter is preferred. *Restatement, Property*, § 45, *comment* (*m*); *2 Powell, supra*, § 188; *26 C. J. S. Deeds* § 141.

■ To focus attention solely on the words "automatically cause title to revert" is to ignore and refuse effect to the following provisions:

"This conveyance is also subject to the following *conditions*, requirements, reservations, covenants and restrictions:" (Emphasis supplied)

and

"A failure to comply with the *covenants* and *conditions of paragraphs* (*a*), (*b*) *and* (*d*) *hereof* * * *." (Emphasis supplied)

Moreover, the deed contained the following clause:

"The City of Ocean City reserves the right to change or modify any restriction, condition or other requirements hereby imposed in a manner agreeable to or as permitted by law."

The repeated use of the word "condition" and the provision reserving the right to alter the arrangement in the clauses are sufficient to cast a reasonable doubt upon what was intended. Accordingly, we shall consider the surrounding circumstances in order to ascertain the intention of the parties in creating the estate.

■■ Before proceeding to a determination of this question, however, it is well to keep in mind what condition in the deed was violated. The plaintiffs treat the condition as to the grading and filling within one year as a single condition. Thus, they contend that since by June 1952 the grading and filling was not complied with, the city, even if the clause be construed as a condition subsequent, had a right to re-enter and terminate the estate. This power of termination for breach of a condition subsequent is in New Jersey an assignable and hence a saleable property

interest. *Southard v. Central R. Co. of New Jersey,* 26 N. J. L. 13 (*Sup. Ct.* 1856); *Bouvier v. Baltimore and N. Y. Railway Co.,* 67 N. J. L. 281 (*E. & A.* 1902); *Riverton Country Club v. Thomas, supra; R. S.* 46:3–7. They therefore conclude that to extend the time for performance was in essence to donate a valuable property right to Stoeco without consideration. *N. J. Const.* 1947, *Art.* VIII, *Sec.* III, *par.* 3. But the fault in analysis is that the language imposing the duty upon the municipality is in reality two conditions and not one. First Stoeco was to fill and grade according to specifications the various lots and secondly, they were to do it within one year. It is this latter condition which was modified by the city. There is a distinction recognized in the cases between a waiver of the time for performance and a waiver of the performance itself. *Kampman v. Kampman,* 98 *Ark.* 328, 135 *S. W.* 905 (*Sup. Ct.* 1911); *Firth v. Los Angeles Pacific Land Co.,* 28 *Cal. App.* 399, 152 *P.* 935 (*App. Ct.* 1915); *Chalker v. Chalker,* 1 *Conn.* 79, 6 *Am. Dec.* 206 (1814); *Plummer v. Worthington,* 321 *Ill.* 450, 152 *N. E.* 133 (*Sup. Ct.* 1926); *Ludlow v. New York & H. R. Co.,* 12 *Barb.* 440 (1852); *Duryee v. Mayor, etc., of City of New York,* 96 *N. Y.* 477 (*Ct. App.* 1884); *Sanderson v. Dee,* 67 *Okla.* 72, 168 *P.* 1001 (*Sup. Ct.* 1917); *Annotation, "Condition Subsequent-Waiver-Estoppel,"* 39 *A. L. R.* 2d 1116, at *p.* 1132. It may be that had the municipality waived the performance such action would be violative of the constitutional proscriptions. But that question is not before us. All the municipality did was to modify the original time for performance.

With this in mind, we proceed to a determination of whether the limitation as to time was a condition subsequent which could be waived by the city in its discretion or a limitation (fee simple determinable).

██ To hold that the condition as to time was so essential to the scheme of the parties that to violate it by a day would result in an immediate and automatic forfeiture of the estate is to distort beyond recognition what the parties intended. There is no indication that time was of the

essence of the agreement. Ocean City was to receive two substantial considerations by this agreement. First, the 226 lots owned and retained by it were to be filled and graded, and hence their value greatly enhanced. Secondly, and perhaps more important, a large tract of land, hitherto the breeding place for mosquitos, was to be developed for productive use. Indeed, an initial *quid pro quo* has already been received in the erection of 23 dwelling units in the area. No immediacy or sense of urgency in relation to the time within which this development was to take place is apparent. It may be fairly inferred that the one-year limitation was originally put in because Stoeco conceived that the fill from the drained lagoons on the west side would be of sufficient quantity and quality that the task could easily be completed within one year. But, as is often the case, difficulties were encountered with the plan, and at last it had to be discarded in favor of alternative and more expensive methods of grading and filling than was originally contemplated. In light of this impediment, the parties renegotiated for the time in which performance was to be made. To say that the parties intended a forfeiture irrespective of future contingencies impeding the original scheme is to ignore and refuse legal efficacy to the following language previously referred to in the resolutions and deed:

"The City of Ocean City reserves the right to change or modify any restriction, condition or other requirements hereby imposed in a manner agreeable to or as permitted by law."

A certain amount of flexibility is inherent among such large scale undertakings as the one under consideration. We might add here that the more one probes into the essence of this arrangement the more it becomes apparent that although deeds were utilized as the devices to accomplish the ultimate desired results, the transaction bears a closer resemblance to the law of contract than of real property. *Cf.* 3 *Williston on Contracts,* § 845; *Restatement, Contracts,* §§ 250, 276.

It is our conclusion that the parties contemplated that the estate created was not to expire automatically at the end of a year and that therefore it is one subject to a condition subsequent.

The remaining questions asserted need not long detain us. Plaintiffs argue that the city has no statutory power to alter or modify the terms and conditions of performance and hence that the resolutions are *ultra vires*. Defendants, on the other hand rely upon the power conferred by *N. J. S. A.* 40:60–26 which reads that a municipality in selling realty may impose "* * * any other conditions of sale in the manner and to the same extent as any other vendor of real estate, * * *," or alternatively upon *N. J. S. A.* 40:60–51.2 and *N. J. S. A.* 40:60–51.5. *R. S.* 40:60–51.2 provides in part:

"Any municipality is authorized and empowered, by resolution of the governing body thereof, to waive, release or modify any covenants, conditions or limitations as to the erection of buildings or any other use to be made of land heretofore imposed by said municipality in sales and conveyances of land by such municipality at public or private sale made prior to July 1, 1956, * * *."

We need not consider whether the waiver of the time for performance is contemplated in the language of *N. J. S. A.* 40:60–51.2. The power to alter or modify the time for performance of a condition is clearly inherent in the power to create such conditions on the sale of realty in the first instance. Thus, *N. J. S. A.* 40:60–26 supplies the basic statutory power, as stated by the court in *Hendlin v. Fairmount Construction Co.,* 8 *N. J. Super.* 310, at *page 339* (*Ch. Div.* 1950):

"*R. S.* 40:60–26 provides that municipalities may impose conditions and restrictions on the use to be made of lands sold by it 'in the manner and to the same extent as any other vendor of real estate'. Implicit in this power to impose restrictions is the necessarily related power of altering, relaxing or waiving such restrictions. * * * Conditions change and policies must be revised in the interest of the public good. If such covenants must remain perpetually rigid and unchangeable and the municipality completely

paralyzed with respect to a needed change, considerable property will be so encumbered and circumscribed as to interfere with the public good."

*Cf.* 10 *McQuillin on Municipal Corporations,* § 29.121.

One last point remains, *i. e.,* whether the instant in lieu proceeding was brought within the time limitations of *R. R.* 4:88–15(*a*). At the time of the commencement of of this suit *R. R.* 4:88–15(*a*) provided:

"(a) No proceedings for review, hearing and relief in lieu of prerogative writs shall be commenced, unless it shall be commenced within 30 days of the accrual of the right to such review, hearing, or relief * * *."

Defendants contended that since the plaintiffs waited over seven months before initiating action they are barred by the rule. But even under the rule prior to its recent amendment exceptions to the stringent time limitations within which action could be commenced existed. The issues raised by this case fall within those exceptions, *i. e.,* constitutional questions, *Holloway v. Pennsauken Twp.,* 12 *N. J.* 371 (1953); *McKenna v. New Jersey Highway Authority,* 19 *N. J.* 270 (1955); see *Moran, "General Administrative Law,"* 10 *Rutgers L. Rev.* 37, 84 (1955), and consideration of whether the resolutions were *ultra vires. Marini v. Borough of Wanaque,* 37 *N. J. Super.* 32, 40 (*App. Div.* 1955). In this connection we might note that the recent amendment to *R. R.* 4:88–15, *i. e., subparagraph* (*c*) provides a more flexible criteria for determining when such actions, when not brought within the time limitation of *subparagraph* (*a*) (45 days) may nonetheless be heard.

The judgment appealed from is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For reversal*—None.