**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0706-18T3

HABITATE, LLC, and THOMAS
MARTIN, individually,

    Plaintiffs/Appellants,

v.

CITY OF BRIDGETON, and
RENEWABLE JERSEY, LLC,

    Defendants/Respondents,

and

ROBERT REYERS, and CLAUS
AND REYERS COMPANY, a
Delaware Corporation,

    Defendants.

_____

Argued October 17, 2019 - Decided August 6, 2020

Before Judges Alvarez, Nugent, and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0517-13.

Keith Alan Bonchi argued the cause for appellants (Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi

& Gill, attorneys; Keith Alan Bonchi, of counsel and on the briefs; Elliott Joseph Almanza, on the briefs).

Matthew Toto argued the cause for respondent City of Bridgeton (Traub Lieberman Straus & Shrewsberry LLP, attorneys; Matthew Toto, on the brief).

Bridget A. Sykes argued the cause for respondent Renewable Jersey, LLC (Fox Rothschild LLP, attorneys; Jack Plackter, of counsel and on the brief; Bridget A. Sykes, on the brief).

PER CURIAM

Plaintiffs, Habitate, LLC and Thomas Martin (collectively "Habitate"), filed this prerogative writs action to challenge a City of Bridgeton resolution authorizing a corrective deed, and quiet title to a parcel of land in the City. The parcel is within the Bridgeton Municipal Port District Redevelopment Area and controls access to two other parcels in the Port District. Habitate previously attempted, unsuccessfully, to acquire the parcel. Defendant, Renewable Jersey, LLC, ("Renewable") the redeveloper, owns the parcel, which it acquired after Bridgeton authorized the corrective deed.

The trial court dismissed Habitate's prerogative writs complaint on summary judgment, finding no genuinely disputed issue of material fact on the motion record and concluding defendants Bridgeton and Renewable were entitled to summary judgment as a matter of law. Habitate appeals. We affirm.

2

Because we write primarily for the parties, who are fully familiar with this case, and because the lengthy procedural history and complex factual backdrop are detailed in two other opinions, Habitate, LLC v. R&R Holdings, LLC, No. A-4262-12 (App. Div. Feb. 6, 2015) ("Habitate I"), and Habitate, LLC v. City of Bridgeton, No. A-2296-15 (App. Div. July 21, 2017) ("Habitate II"), it is unnecessary to recount the case history in its entirety. The following synopsis will suffice.

In 1987, Bridgeton adopted the Port District Redevelopment Plan for its Port District. The property at issue here, 50 Grove Street, designated as Block 132, Lot 1.02 on Bridgeton's tax map (the "property"), was within the Port District. Habitate I, slip op. at 2. Years later, after acquiring title to the property in a tax sale foreclosure, Bridgeton deeded it to a purported limited liability company, R&R Holdings, LLC ("R&R"), on December 27, 2004. Defendant Reyers was purportedly R&R's president. Id. at 4. The agreement of sale between Bridgeton and R&R committed Reyers to creating forty new full-time jobs at the property. Ibid.

Reyers proved to be disreputable. In 2007, the United States filed an indictment charging him with one count of conspiracy to commit securities and mail fraud and one count of money laundering, charges to which he negotiated

A-0706-18T3

pleas and for which he was sentenced to probationary terms. Central to this appeal, when Bridgeton conveyed title of the property to R&R in 2004, the company did not exist. Ibid. Reyers, who had judgments against him, had requested title be placed in R&R so that he could avoid judgments attaching to the property. Ibid. Concerning the property, Reyers failed to fulfill the commitments he made in the agreement of sale between Bridgeton and R&R. R&R stopped paying taxes on the property. Id. at 4-5.

In April 2011, Renewable and Bridgeton entered into a redevelopment agreement in which Bridgeton designated Renewable as the Redeveloper of land within the Port District Redevelopment Plan, including the property. Id. at 5. In 2011 and 2012, Habitate acquired tax sale certificates for the property. Ibid. On February 17, 2012—the year following that in which Renewable became the redeveloper—Habitate filed a complaint to foreclose on a tax sale certificate. Renewable filed a motion to intervene. The trial court granted the motion. Habitate appealed. We affirmed. Id. at 2.

While Habitate I was pending, Habitate learned Renewable had acquired the property. Bridgeton City Council had approved a corrective deed to remedy the 2004 conveyance from Bridgeton to R&R, the non-existent company. Habitate filed a four-count complaint in lieu of prerogative writs challenging

4

Bridgeton Council's action and the corrective deed. The trial court stayed the prerogative writs action pending the appeal in Habitate I. Following our decision in Habitate I, Habitate amended its prerogative writs complaint in which it added a fifth count.

Defendants, Reyers and Claus and Reyers Company ("Claus") defaulted. Habitate filed a motion to take discovery concerning Bridgeton's resolution authorizing the corrective deed, and Bridgeton and Renewable moved for summary judgment. The trial court denied Habitate's motion and granted Bridgeton's and Renewable's motions. Habitate appealed. We affirmed the trial court's dismissal of count five of the amended complaint but otherwise reversed and remanded. Habitate II, slip op at 17.

The facts the parties discovered on remand and established on the motion record underpin this appeal. To provide the complete context and proper framework for the summary judgment motion, we begin with the amended complaint. The first count, entitled "Illegal Manipulation of Land Titles," alleged Reyers was the property's lawful owner, and Bridgeton's action in authorizing a corrective deed for land it did not own was "illegal and ultra vires." Habitate sought, among other remedies, an order voiding the resolution authorizing the corrective deed.

The second count, conspiracy, alleged the four defendants "conspired together to manipulate the land records in the state of New Jersey." The gist of the allegation was that Bridgeton did not have title to the property when it adopted the resolution authorizing the corrective deed, and thereby, in effect, enabled Reyers to avoid judgment creditors.

The third count asked the court to quiet title to the property. The fourth count alleged the conspiracy of defendants to have Bridgeton issue a false corrective deed to Claus and Reyers, thereby manipulating land title to enable Reyers to avoid creditors, constituted common law fraud. As previously noted in Habitate II, we dismissed the fifth count.[1]

Discovery disclosed that after Renewable became the redeveloper for the Port District in April 2011, it attempted to acquire the property directly from R&R. In October 2012, eight months after Habitate had filed the tax certificate foreclosure complaint, Renewable and R&R entered into an agreement of sale in which Renewable agreed to purchase the property for $55,692, $5000 more than the redemption amount. Habitate I, slip op. at 6. The parties could not

---

[1] The fifth count alleged plaintiff Martin had purchased a $7975.55 assignment of judgment against Reyers, which he contended was a lien against the property due to the conspiratorial manipulation of title. He sought a declaration that he had a judgment lien against the property.

A-0706-18T3

close because R&R could not convey marketable title. Ibid. R&R, the company to which Bridgeton had conveyed the property in 2004, did not exist at the time. Consequently, Renewable and Reyers had to determine how, if possible, they could remedy the problem so that a title company would insure the title.

During the spring of 2013, Reyers provided information for his attorney to use in preparing an affidavit for the tax certificate foreclosure action Habitate had filed in February 2012. According to Reyers, the 2004 deed conveyed the property to R&R Holdings, LLC, but the deed should have conveyed the property to R&R Holding Company, a wholly owned subsidiary of Claus, a Delaware corporation. Reyers referenced a "resolution for R&R Holding [C]ompany to become and [sic] LLC [i]n New Jersey (reg 04004842230) [d]ated March 1[,] 2012."

Reyers also referenced a "fax" of what purported to be a director's resolution, prepared on a form entitled "Directors' Resolution (United States) Form-Law Depot." This "Consent to Action Without Meeting" contained a resolution authorizing "the follow [sic] DBA's as subsideries [sic] of Claus and Reyers Company[.]" One "DBA" was "R&R Holding Company." Although the resolution was dated March 17, 2000, the LawDepot form included printed dates in the lower left corner: "2002-2012."

Reyers' attorney provided a written synopsis of the information to Renewable's attorney on April 16, 2013. Two days later, Renewable's attorney prepared a memorandum (the "Memorandum") for the title company with whom the parties had been dealing. The Memorandum stated in pertinent part:

> By deed dated 12/27/04 and recorded 1/3/05, the City of Bridgeton deeded Block 132, Lot 1.02 (the "Property") to the entity, R&R Holdings, L.L.C. This entity, while a valid New Jersey limited liability company, has no affiliation with Robert Reyers. Therefore, an entity owned by Mr. Reyers does not currently hold title to the property and a corrective deed must be filed.
>
> Mr. Reyers advised that the Deed should have been made to R&R Holding Company, which is a wholly owned subsidiary of Claus And Reyers Company (CAR), a Delaware corporation. According to Mr. Reyers, R&R Holding Company was a "d/b/a" of CAR until March 1, 2012, at which time it was incorporated in New Jersey as a limited liability company known as R&R Holding Company Limited Liability Company. Because R&R Holding Company was a "d/b/a" of CAR at the time of the 2004 conveyance, the corrective deed may be made to CAR. CAR was incorporated in Delaware on November 14, 2004.

Noting that Claus was voided in 1996, the Memorandum explained what had to be done to "revive" the corporation under Delaware law. The Memorandum concluded:

> The objective is to ensure that conveyance of the Property from [Claus] to Renewable Jersey, LLC is

8

insured free and clear of any judgments against Robert Reyers. The title company should review this memorandum and confirm that it will insure title to the Property as described herein free and clear of any judgment against Robert Reyers.

The Memorandum is dated April 18, 2013. After paying delinquent taxes and penalties, Reyers revived Claus. On May 2, 2013, Reyers signed a corporate resolution on behalf of Claus authorizing R&R, characterized as a wholly owned subsidiary of Claus, to deed the land to Renewable. Bridgeton City Council adopted the resolution in controversy on May 7, 2013. As we recounted in Habitate I:

> On May 7, 2013, Bridgeton adopted a "resolution authorizing the execution of a corrective deed" at a regularly scheduled council meeting. The substance of this resolution was that Bridgeton would reconvey the lot to [Claus]. This reflected Bridgeton's intent for the initial conveyance, at which time [Claus] was allegedly doing business under the R&R name.
>
> On May 8, 2013, without first seeking court authorization, Renewable and Reyers amended their agreement of sale, changing the seller from R&R to [Claus] to reflect the corrective deed. The purchase price was also increased from $50,692 to $75,320, reflecting the updated redemption cost of the tax sale certificates. When added to the $5000 Renewable agreed to pay to Reyers, the consideration specified on the deed was $80,320.
>
> Bridgeton's May 8, 2013 conveyance to [Claus] tracked the recommendations made by Renewable's attorney to

correct the flaw in the title, namely, that in 2004 Bridgeton had conveyed the ownership of the lot to a non-existent corporation. . . .

[Id. at 6-7.]

During discovery on remand, Habitate deposed the attorneys who represented Reyers, Bridgeton, and Renewable, as well as Renewable's principal and the owner of the title company that insured title. The title company's owner played no role in formulating the solution outlined in the Memorandum. His company issued a title policy, relying heavily on the information in the Memorandum "as far as solving [the] title issues." That a deed had been issued in 2004 to a non-existent entity did not really surprise him, as he explained, "going back over the years, it is not uncommon that I've come across conveyances into entities which don't exist."

The title company's owner also testified he had a copy of Reyers' affidavit in his file. He did not recall if he read the Consent to Action Without Meeting. He doubted he looked at it.

Reyers' attorney believed he prepared Reyers' affidavit but could not recall who requested it. The attorney recalled that he obtained most of the information for the affidavit, if not all, from his client. The attorney did not recall who prepared the State of Delaware Corporate Resolution of Claus, nor did he recall

who requested or who prepared the Consent to Action Without Meeting document. He thought it was a document needed to "resuscitate" Claus. He did not note the date on the document's lower left corner and did not think it was "of any moment" based on his understanding of Delaware corporate law. Questioned about his client's criminal record, Reyers' attorney recalled his client had "criminal issues," but did not recall whether his client had been convicted.

The attorney for Renewable, who prepared the Memorandum, testified its purpose "was to ensure that there was a path to get clear title to my client" and they "were just trying to get clear title into Renewable[.]" He explained that anytime he was involved in a transaction involving conveyance of property, his objective would be to get free and clear title for his client. Often, title searches reveal judgments against entities not conveying title. He viewed the situation with Reyers, Claus, R&R, and Renewable as one "where there were no judgments against the entity that was conveying the title." He emphasized, "I made sure of that." For these reasons, judgments against Reyers would not have presented a problem "with clear title."

Counsel thought he obtained from Reyers the information reflected in the Memorandum. He could not recall if he saw Reyers' affidavit; he did not see

11

the Claus corporate documents before closing and he did not see them at closing because closing was attended by another member of his law firm.

Bridgeton's attorney testified she understood the corrective deed's purpose to be as stated in the deed, namely, "to correct an error as to the identity of the grantee contained in that certain deed . . . dated December 27, 2004[.]" Concerning the "error," she conducted no investigation of her own to determine if there had been an error; rather, she relied upon the representations of Claus's attorney and "the title company's requests." She did, however, check the 2004 deed. She had no reason to disbelieve the information contained in the Memorandum.

The minutes of the May 7, 2013 Bridgeton Council meeting at which the resolution authorizing the corrective deed was adopted include the following: "[The President] called upon the Solicitor . . . who explained the reasoning for adoption which was ordered by the Superior Court Judge." Questioned about that alleged representation during her deposition, Bridgeton's attorney said she did not recall what she told Council about the corrective deed. She testified, however, she did not believe a judge had ordered a corrective deed, "[s]o if the clerk used those words, she incorrectly paraphrased my words."

12

In addition to discovery depositions, Habitate moved to compel certain email communications between Reyers' and Renewable's attorneys. Renewable cross-moved for a protective order and provided a privilege log. Habitate opposed the protective order, alleging privilege did not apply because the communications were made in furtherance of fraud. The trial court ultimately granted Habitate's motion in part but determined fifteen emails were privileged. The court reasoned that because Reyers and Renewable shared a common legal interest, these fifteen emails between their attorneys and principals were protected against disclosure.

Upon conclusion of discovery, Habitate moved for summary judgment, and Bridgeton and Renewable cross-moved for summary judgment. In an oral opinion, the court denied Habitate's summary judgment motion, granted Renewable's and Bridgeton's cross-motions and dismissed Habitate's complaint.

The court initially rejected Habitate's argument that Reyers should be deemed the property's owner. The court explained:

> I find little legal basis for concluding that title vested in Robert Reyers individually as a result of the original 2004 conveyance. The case that plaintiff cites for this proposition is unrelated to the transfer of title to real property. Rather, that case resolves the issuance of providing insurance coverage to an unnamed insured under policy language that [was] ambiguous . . .

A-0706-18T3

Here, the relevant law is that which gives effect to the parties' intent in real estate transactions. [Oldfield v. Stoeco Homes, Inc., 26 N.J. 246, 257 (1958)], a 1958 New Jersey Supreme Court case, in which the Court said the universal touchstone today is the intention of the parties to the instrument creating the interest in land.

Here, the evidence shows that the City of Bridgeton intended to transfer 50 Grove Street to a corporate [re]developer. Once again, at the time that it issued the corrective deed, it was attempting to transfer property to a new corporate developer, Renewable, and had to clear the cloud created by the transfer into a corporate entity that was not a Reyers-controlled corporate entity, see [Den ex dem. Cairns v. Hay, 21 N.J.L. 174, 177-78 (Sup. Ct. 1847)]. . . .

The court determined a corrective deed was necessary because Bridgeton intended to transfer the property to a corporate redeveloper, not Reyers personally. Addressing manipulation of title (count one) and fraud (count four) together, the court found the claims failed "as no evidence ha[d] been submitted to support the inference that Renewable or [Bridgeton] had any knowledge of any alleged false claims by Reyers."

Moving to conspiracy (count two), the court found the evidence submitted was insufficient to support a claim of civil conspiracy:

Basically, that evidence is Renewable's counsel drafting a memo to West Jersey Title regarding the intent to purchase free and clear of any personal judgment. That would appear to be just regular

14

business correspondence and . . . is neither circumstantial nor conclusive evidence of an unlawful agreement between the parties to inflict a wrong or injury upon another.

Further, Renewable submits and plaintiff concedes in its reply brief that there is no evidence supporting that Renewable had knowledge of the falsity of Reyers' claims. Based on this concession, it makes little sense to conclude as plaintiff later does, that Renewable either knew of or should've known that it was developing [a scheme] that would deprive plaintiff of its right to foreclose on the property and gain title to the property.

. . . .

With respect to conspiracy, knowledge is a prior condition of intent. Defendants could not have intended to inflict a wrong or injury upon plaintiff via the use of Mr. Reyers' statements without having known in the first place that the statements were false. Based on that count two alleging the conspiracy is dismissed.

Last, concerning the third count, to quiet title, the court explained:

Here, plaintiff is unable to satisfy the primary jurisdictional element of the quiet title action. Plaintiff is neither in peaceable possession of the lands nor claiming title to them. Rather, plaintiff is asking the Court to quiet title to the subject land in Robert Reyers and claiming that ownership of the land has rightfully already vested in him as of 2004.

Habitate filed this appeal from the trial court's memorializing order.

A-0706-18T3

We affirm, substantially for the reasons expressed by Judge McDonnell in her comprehensive oral opinion. We add the following comments.

Each theory of liability identified in the amended complaint's first four counts rests on the foundation that Reyers owns, or should be declared to own, the property, so that his judgment creditors would have liens against it. The complaint expressly and baldly asserts in paragraph thirty-six, "The lawful owner of the subject property is in fact Robert Reyers." Because this foundational premise is devoid of factual and legal support, it crumbles, as do the liability theories built upon it.

The premise is devoid of factual support because the property was never conveyed to Reyers, Reyers never requested the property be conveyed to him, and Reyers never intended the property be conveyed to him. The premise is devoid of factual support because Bridgeton never conveyed the property to Reyers, Bridgeton was never asked to convey the property to Reyers, and Bridgeton never intended to convey the property to Reyers. Construction of the motion record as generously as possible in Habitate's favor supports no contrary conclusion.

Habitate's foundational premise—that Reyers owned the property—is devoid of legal support. Habitate has cited no case that supports the proposition

a deed conveying property to a wrongly named or non-existent entity should be reformed to convey title in a manner contrary to the intention of any party to the transaction, and to a party never intended to have title. Rather, Habitate cites a case—not precedential—in which an insurance policy issued in an individual's trade name was construed against an insurer and in favor of the individual. That decision was based on settled legal principles requiring ambiguities in policies of insurance to be construed in favor of coverage. Am. Bankers Ins. Co. of Fl. v. Stack, 208 N.J. Super. 75, 80 (Law Div. 1984). The analysis in the case before us is not controlled by legal principles applicable to insurance policies issued to consumers. Rather, the case is controlled by legal principles applicable to redevelopment of municipal land, deeds, and the conveyance of real property, legal principles aptly and correctly applied by Judge McDonnell.

Our de novo review of the record confirms Judge McDonnell's findings Bridgeton and Renewable had no knowledge Reyers' statements concerning the business entities were false.

We have considered Habitate's remaining arguments, including its argument that it was improperly denied certain discovery, and found them to be without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-0706-18T3